ROSEMARY SCHIEFFER, APPELLANT, V. CATHOLIC ARCHDIOCESE OF
OMAHA, A CORPORATION, AND TIMOTHY LANGE, APPELLEES.

508 N.W.2d 907

Filed December 17, 1993.   No. S-91-388.

Herbert J. Friedman, of Friedman Law Offices, for appellant.

Patrick G. Vipond and William R. Settles, of Kennedy, Holland, DeLacy & Svoboda, and Edward D. Hotz, of Zweiback, Hotz & Lamberty, for appellee Catholic Archdiocese of Omaha.

John M. Gerrard, of Gerrard, Stratton & Mapes, P.C., for appellee Lange.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

BOSLAUGH, J.

This is a suit for damages brought by the plaintiff, Rosemary Schieffer, against the defendants, Catholic Archdiocese of Omaha (Archdiocese), a corporation, and Timothy Lange. The original petition, filed March 27, 1990, was filed in the name of Jane Doe. Separate actions against the defendants were also filed by the plaintiff's husband and daughter. All of these actions were consolidated. General demurrers to the petitions of the plaintiff and her husband were sustained and the petitions dismissed on September 28, 1990. Apparently, there were no appeals from the order of dismissal.

Motions to strike and to make the plaintiff's original petition more definite and certain were filed by the defendants, and the demurrers to that petition were withdrawn. The motions were sustained in part, and on December 10, 1990, the plaintiff filed an amended petition. The amended petition alleged intentional infliction of emotional distress, negligence, and breach of fiduciary duty in separate causes of action. The amended petition also contained a fourth cause of action involving the plaintiff's husband's alleged loss-of-consortium claim that had been assigned to her. Demurrers to the amended petition were sustained on February 8, 1991, and the amended petition dismissed. This appeal followed.

The plaintiff's 11 assignments of error combine to assert that the trial court erred (1) by sustaining the defendants' demurrers and dismissing the amended petition, (2) by failing to allow the plaintiff an opportunity to amend her amended petition, and

(3) by failing to specify the grounds for sustaining the defendants' demurrers.

In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993).

A petition is sufficient if, under the facts alleged, the law entitles a plaintiff to recover. That is to say, facts are sufficient to constitute a cause of action when they are a narrative of the events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Gerken v. Hawkins Constr. Co.*, 243 Neb. 157, 498 N.W.2d 97 (1993).

Viewed most favorably to the plaintiff, the amended petition alleges the following:

In 1979, the plaintiff began counseling with the defendant Lange concerning family matters. Lange was the plaintiff's parish priest and "spiritual leader." During this time period, the plaintiff was vulnerable because of prior emotional problems. While she was in this vulnerable state and during the course of pastoral counseling, Lange made sexual advances toward the plaintiff that continued for a period of 3 years. In 1982, Lange and the plaintiff began a sexual relationship that continued until approximately June 1989.

The amended petition further alleges that at all times applicable to this action, Lange was an employee of the defendant Archdiocese and at all times was acting within the scope and course of his employment. Further, Lange and the Archdiocese were charged with the obligation to administer pastoral and spiritual advice and care to the plaintiff and her family, and as such, held a position of trust and responsibility to the plaintiff and her family.

The first assignment of error is that the trial court erred by sustaining the demurrers of the defendants and dismissing the plaintiff's amended petition. The plaintiff argues that she stated facts sufficient to constitute a cause of action as to all of her

claims. We discuss the various causes of action in turn, beginning first with the allegations against the defendant Lange. The plaintiff's claims against Lange, as alleged in the amended petition, are based on intentional infliction of emotional distress, negligence, and breach of fiduciary duty.

The plaintiff's first cause of action alleges that the conduct of Lange was outrageous and extreme and caused her severe emotional distress. As a proximate result of that conduct, the plaintiff suffered severe and permanent emotional injury and incurred current and future medical expenses. The plaintiff also claims that she has lost faith in the Catholic Church and in God.

With regard to intentional infliction of emotional distress, this court has delineated three elements that must be met for this cause of action:

"(1) [t]hat there has been intentional or reckless conduct; (2) [t]hat the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community; and (3) [t]hat the conduct caused emotional distress so severe that no reasonable person should be expected to endure it."

*Nichols v. Busse*, 243 Neb. 811, 817, 503 N.W.2d 173, 179 (1993), quoting *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985).

There are several reasons why the plaintiff's alleged claim for intentional infliction of emotional distress was subject to demurrer. What is involved in this case is conduct between consenting adults. There is no allegation that the defendant used force or fraud to accomplish his sexual relations with the plaintiff during the period from 1982 to 1989. The amended petition does allege that the plaintiff was "vulnerable" because of "prior emotional problems." This allegation falls far short of alleging that the plaintiff was incapable of consenting to what took place.

In tort law, consent ordinarily bars recovery for intentional interferences with person or property. According to W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 18 at 112 (5th ed. 1984), it is a fundamental principle of common law that "to one who is willing, no wrong is done." That text further

states:

> [W]hen the defendant by his conduct intentionally interferes with a legally protected interest of person or property, either consent to the invasion resulting from such conduct, or consent to the conduct that brought about the invasion, avoids liability. One, of course, consents to an invasion such as a sex contact if he or she wants or desires the invasion. Consent avoids recovery simply because it destroys the wrongfulness of the conduct as between the consenting parties, however harmful it might be to the interest of others, and even though it is perhaps both immoral and criminal.

*Id.* at 113.

A sexual relationship between two consenting adults is not outrageous conduct such as to give rise to a claim for intentional infliction of emotional distress. This seems especially true given the fact that the plaintiff and Lange engaged in an approximate 7-year sexual relationship. See, also, Restatement (Second) of Torts § 892 A (1982).

The plaintiff cites two cases which held that a parishioner stated a claim for intentional infliction of emotional distress against a member of the clergy for sexual misconduct with a parishioner: *Destefano v. Grabrian*, 763 P.2d 275 (Colo. 1988), and *Erickson v. Christenson*, 99 Or. App. 104, 781 P.2d 383 (1989).

We believe the *Destefano* and *Erickson* cases may be distinguished factually, at least in part. In the *Destefano* case, the court emphasized that the defendant had held himself out to be trained and capable of conducting marital counseling. The court further stated that on remand, it was for the trial court to determine in the first instance as to whether the conduct of the defendant priest at issue was "outrageous."

The *Erickson* case involved conduct against a 13-year-old girl. The case at bar involves an adult plaintiff, and there is no allegation that the defendant Lange held himself out as a professionally trained counselor.

In the second cause of action, the plaintiff alleged that Lange was negligent by failing to properly counsel her concerning her marital and family relationships when he knew or should have

known she was having domestic difficulties and that, further, Lange was negligent by failing to remove himself as parish priest when he knew or should have known that a continuing relationship with her would cause her emotional harm. Finally, the plaintiff alleges that Lange was negligent by violating his oath of celibacy. In substance, the plaintiff alleged a claim for clergy malpractice, a purported breach of professional standards by a priest.

So far as we have been able to determine, no jurisdiction to date has recognized a claim for clergy malpractice. See, *Nally v. Grace Com. Church of the Valley*, 47 Cal. 3d 278, 763 P.2d 948, 253 Cal. Rptr. 97 (1988), *cert. denied* 490 U.S. 1007, 109 S. Ct. 1644, 104 L. Ed. 2d 159 (1989); *Destefano v. Grabrian, supra*; *Byrd v. Faber*, 57 Ohio St. 3d 56, 565 N.E.2d 584 (1991); *Schmidt v. Bishop*, 779 F. Supp. 321 (S.D.N.Y. 1991).

The allegations of negligence against Lange with regard to failing to remove himself as parish priest and violating his vows of celibacy were not discussed in the plaintiff's brief and will not be further considered.

The third cause of action alleges that Lange had a fiduciary obligation to the plaintiff to refrain from doing anything that might harm her relationship with her husband and children, in light of Lange's continuing duty to exercise reasonable care. The plaintiff alleges that Lange breached this duty and that this breach caused her damage.

Several cases have allowed recovery on the theory of breach of fiduciary duty with regard to sexual misconduct of a member of the clergy with a parishioner. See, *Destefano v. Grabrian, supra*; *Erickson v. Christenson, supra*.

However, this cause of action was rejected by the court in *Schmidt v. Bishop, supra*. The *Schmidt* court recognized that with regard to a breach-of-fiduciary cause of action against a member of the clergy, there are many constitutional difficulties with regard to defining a standard of care. The *Schmidt* court reasoned:

> [I]n analyzing and defining the scope of a fiduciary duty owed persons by their clergy, the Court would be confronted by the same constitutional difficulties encountered in articulating the generalized standard of

care for a clergyman required by the law of negligence. . . . [A]s with her negligence claim, [the plaintiff's] fiduciary duty claim is merely another way of alleging that the defendant grossly abused his pastoral role, that is, that he engaged in malpractice.

(Emphasis omitted.) *Schmidt v. Bishop*, 779 F. Supp. at 326. We agree with the reasoning of the court in the *Schmidt* case.

The fourth cause of action alleges a loss-of-consortium claim assigned to the plaintiff by her husband, Sylvester Schieffer. The amended petition alleges that as a result of the defendants' intentional infliction of emotional distress, negligence, and breach of fiduciary duty, the husband has lost the care and comfort of his wife and has been deprived of her comfort and companionship and incurred pain, suffering, and mental anguish, past and future. With regard to this cause of action, the demurrers filed by the defendants alleged that the plaintiff failed to state facts sufficient to state a cause of action. The demurrers also alleged an additional ground for dismissal, because this cause of action alleged the same facts and issues as the separate previous action that had been filed by the husband. Since the husband's petition in the previous action was dismissed by the trial court, the present loss-of-consortium cause of action should be dismissed as res judicata.

It appears that the trial court properly dismissed this cause of action based on both reasons alleged in the defendants' demurrers. It is clear that the husband's loss-of-consortium claim, assigned to the plaintiff, was essentially a claim for criminal conversation and alienation of affection. Causes of action based on criminal conversation or alienation of affection are barred by Neb. Rev. Stat. § 25-21,188 (Reissue 1989). See *Speer v. Dealy*, 242 Neb. 542, 495 N.W.2d 911 (1993). The statute provides: "No cause of action for (1) alienation of affections or (2) criminal conversation shall be allowed to commence after January 9, 1986." Accordingly, since there could be no recovery on a claim for the "loss of consortium" in this case under § 25-21,188, the trial court properly dismissed the fourth cause of action.

The trial court also properly dismissed the loss-of-consortium cause of action on the basis of res judicata.

The loss-of-consortium claim was originally alleged in a separate action filed by the plaintiff's husband. After the defendants demurred to the husband's petition, the district court dismissed the petition on October 2, 1990. It does not appear from the record that the husband amended his petition or appealed that order of dismissal. However, the husband subsequently assigned the loss-of-consortium claim to the plaintiff, who included it as the fourth cause of action in the amended petition. The defendants' demurrers alleged that this cause of action was barred as res judicata, since the same claim had been previously litigated and dismissed by the trial court in a separate action.

> "The doctrine of res judicata is based on the principle that a final judgment on the merits by a court of competent jurisdiction is conclusive upon the parties in any later litigation involving the same cause of action. . . .
>
> "Res judicata is founded on a policy favoring termination of an action by preclusion or prevention of subsequent litigation on the same cause."

*In re Estate of Watkins*, 243 Neb. 583, 586, 501 N.W.2d 292, 294-95 (1993), quoting *NC + Hybrids v. Growers Seed Assn.*, 228 Neb. 306, 422 N.W.2d 542 (1988). The loss-of-consortium claim was adjudicated in the prior action. Since the husband elected not to amend or appeal the trial court's dismissal of his suit, the plaintiff is now precluded from litigating the same issue again.

In the amended petition, the plaintiff alleges that the defendant Archdiocese was directly negligent by hiring Lange and placing him in the position of parish priest. The amended petition also alleges that the Archdiocese was negligent in failing to investigate Lange's background by inquiring into his relations with other women while acting as parish priest in other parishes, when the Archdiocese knew or should have known that Lange had been actively involved in relationships with women in the past, in violation of his celibacy vows. Finally, the plaintiff argues that the Archdiocese was negligent in failing to supervise Lange in connection with his pastoral duties when they knew or should have known of his past sexual affairs and by failing to remove Lange as a parish priest when they had this

knowledge.

If there is no tort liability to the plaintiff against Lange individually, it follows that the Archdiocese cannot be held liable for his conduct. *Strock v. Pressnell*, 38 Ohio St. 3d 207, 527 N.E.2d 1235 (1988), supports this proposition.

In *Strock*, a husband and wife began marriage counseling with a Lutheran minister. The minister and the wife began a consensual sexual relationship, which eventually led to the divorce of the husband and the wife. The husband brought an action against both the minister and the church which employed him. The suit against the minister alleged clergy malpractice, breach of fiduciary duty, fraud, misrepresentation, non-disclosure, and intentional infliction of emotional distress. The suit against the church alleged liability based on agency principles and claims of negligent supervision and negligent training of the minister.

At trial, the husband's claims against both the minister and the church were dismissed. The Ohio Supreme Court affirmed the dismissals of the husband's claims. With regard to the cause of action against the church, the court held that the church could not be liable to the husband either on agency principles or for negligent supervision or training of the minister. The court stated:

> It is axiomatic that for the doctrine of respondeat superior to apply, an employee must be liable for a tort committed in the scope of his employment. Likewise, an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer. Because no action can be maintained against [the minister] in the instant case, it is obvious that any imputed actions against the church are also untenable.

(Emphasis omitted.) *Strock v. Presnell*, 38 Ohio St. 3d at 217, 527 N.E.2d at 1244.

The plaintiff also assigns as error the failure of the district court to allow amendment of her amended petition upon the court's sustaining of the defendants' demurrers.

Since we have determined that the plaintiff failed to state

facts sufficient to constitute a cause of action against the defendant Lange, it is unnecessary to consider the plaintiff's contention with regard to the Archdiocese. If the plaintiff has not established a cause of action against Lange, then the plaintiff can have no cause of action against the Archdiocese for anything that the plaintiff claimed Lange did.

The plaintiff does not tell us what additional facts could be alleged in a further attempt to state a cause of action.

Neb. Rev. Stat. § 25-854 (Reissue 1989) provides that if a demurrer is sustained, "the adverse party may amend, if the defect can be remedied by way of amendment . . . ." This statute, however, does not provide an absolute right of amendment, nor is it without limitation. See, *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992); *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986). This court has also previously held that "it is an abuse of discretion by the trial court ' " 'to sustain a demurrer without leave to amend where there is a reasonable possibility that the defect can be cured by amendment, particularly in the case of an original complaint.' . . ." ' " *LaPan v. Myers*, 241 Neb. at 793, 491 N.W.2d at 49-50, quoting *Newman Grove Creamery Co. v. Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981).

The record does not support a reasonable possibility that the plaintiff could allege additional facts so that the petition would state a cause of action. The plaintiff had already amended the petition once. Accordingly, the trial court did not err in dismissing the amended petition in this case without allowing the plaintiff an opportunity to further amend her pleading.

The final assignment of error is the failure of the district court to specify the grounds upon which it sustained the defendants' demurrers. The plaintiff argues that although the defendants stated more than one ground for the demurrers, the trial court's order was silent regarding which of the multiple theories were sustained. This court has previously held that *when a demurrer is interposed stating several grounds*, the court should, when sustaining the demurrer, specify the grounds upon which the demurrer is sustained; otherwise, this court is not informed regarding wherein the complaint was deficient. See, *Fulk v. McLellan*, 243 Neb. 143, 498 N.W.2d 90

(1993); *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 234 Neb. 789, 452 N.W.2d 746 (1990).

The defendants' demurrers in this case alleged that the amended petition "does not state facts sufficient to constitute a cause of action." The demurrers also alleged an additional ground for dismissal with regard to the husband's loss-of-consortium claim. The demurrers asserted that this cause of action pled the same facts and issues that existed in the previous action dismissed by the district court and therefore should be dismissed based on res judicata grounds. Thus, with the exception of the loss-of-consortium claim, the only grounds asserted for the demurrer was failure to allege facts sufficient to constitute a cause of action. Therefore, the grounds on which the trial court based its demurrer as to the first three counts of the amended petition were readily apparent.

> Failure to specify the grounds for sustaining a demurrer does not affect the legal position of the parties in the case. "[T]his court will not presume, when a trial court fails to state a reason for the dismissal of an action, that the dismissal was based on an invalid ground."

*LaPan v. Myers*, 241 Neb. at 793, 491 N.W.2d at 49, quoting *Bert Cattle Co. v. Warren*, 238 Neb. 638, 471 N.W.2d 764 (1991).

For reasons stated previously, it was clear that the husband's loss-of-consortium claim was properly dismissed on both grounds asserted in the demurrers. Accordingly, the district court's failure to specify the ground upon which the demurrers were sustained with regard to this cause of action did not prejudice the plaintiff. The final assignment of error is without merit.

The judgment of the district court sustaining the demurrers to the amended petition and dismissing the amended petition is affirmed.

AFFIRMED.

WHITE, J., dissents.

LANPHIER, J., dissenting.

I respectfully dissent. The majority decision concludes that a person cannot claim he is wronged by actions of another to

which he consented. This is correct logic and law by itself. However, the proposition overlooks the question of how such consent was achieved.

Should consent bar a claim where such consent may have been achieved by the actions of a fiduciary which constitute overreaching by such fiduciary? That is a question which cannot be answered as a matter of law. The answer is best left to a jury after consideration of all of the facts. The only ground listed in the demurrers which is applicable to our consideration of this matter is failure to state a cause of action. The petition states a cause of action in three respects.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's amended petition states that plaintiff began counseling with Lange and that during the course of counseling, "Lange made numerous sexual advances on Plaintiff which lasted for approximately a three-year period." During this time, plaintiff alleged, she was "vulnerable because of prior emotional problems." Plaintiff also alleged that in 1982, Lange succeeded in "seducing" the plaintiff. The majority determined that these allegations are insufficient to state a cause of action for intentional infliction of emotional distress. This decision is based on a determination that "[w]hat is involved in this case is conduct between consenting adults."

The petition alleges, however, that plaintiff was not a fully "consenting adult." Plaintiff alleges she was vulnerable and that she was seduced by a pastoral counselor whom she trusted. In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Gallion v. Woytassek, ante* p. 15, 504 N.W.2d 76 (1993); *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993). Assuming, as we must, that plaintiff's allegations are true, that she was vulnerable and that she was so seduced, it cannot fairly be said as a matter of law that she was a

"consenting adult" so as to bar a claim against one who would ordinarily be classified as a fiduciary.

Plaintiff cited two cases, *Destefano v. Grabrian*, 763 P.2d 275 (Colo. 1988), and *Erickson v. Christenson*, 99 Or. App. 104, 781 P.2d 383 (1989), in which claims against members of the clergy for intentional infliction of emotional distress were upheld. The majority, however, concludes that these cases are factually distinct.

The defendant in *Destefano* was alleged to have held himself out as being trained and capable of conducting marital counseling, which is not alleged in this case. Alleging that the defendant held himself out as a trained professional marital counselor may be necessary to establish one type of a fiduciary relationship to establish a breach of a fiduciary's duties. There is no need to establish such a relationship to establish a cause of action for intentional infliction of emotional distress. The outrageousness of Lange's conduct should not depend upon whether or not he held himself out as one type of professional. It may be one of many factors which should be considered when determining the degree of culpability.

Likewise, the fact that the plaintiff in *Erickson* was only 13 years old when the conduct at issue began is just one factor to consider when determining whether the conduct in question is outrageous. Certainly, the fact that the plaintiff here is an adult does not mean that Lange's conduct could not be outrageous.

To state a cause of action for intentional infliction of emotional distress, the plaintiff must allege facts that would show (1) there has been intentional or reckless conduct, (2) the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993); *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985).

The petition alleges facts which, if viewed as true, establish that Lange's conduct was intentional. The petition further alleges that "the conduct of the Defendants, and each of them, was outrageous and extreme in nature and intended to cause

and did cause severe emotional distress upon Plaintiff." In her petition, plaintiff alleges that "by virtue of the conduct hereinbefore set forth, that the conduct of the Defendants . . . was outrageous and extreme in nature . . . ." The petition set forth the following conduct:

Starting in 1979, Plaintiff began counseling with Lange, concerning family matters having full confidence that he was her parish priest and spiritual leader. During this time, Plaintiff was vulnerable because of prior emotional problems. Commencing in about 1979, while the plaintiff was vulnerable, and during the course of pastoral counseling, Lange made numerous sexual advances on Plaintiff which lasted for approximately a three-year period. In 1982, Lange succeeded in seducing the Plaintiff, and a sexual relationship developed between Lange and Plaintiff that lasted until approximately June of 1989.

. . . At all times herein, Defendants, and each of them, were charged with the obligation to administer pastoral and spiritual advice and care to the Plaintiff and her family, and as such, held a position of trust and responsibility to Plaintiff and her family.

Plaintiff alleges she "incurred severe and permanent emotional injury and was damaged as follows: A. Plaintiff incurred medical expenses of $2,500.00 and will incur medical expenses in the future. B. Plaintiff has lost her faith in the Catholic Church and God and incurred emotional pain, suffering and mental anguish, past and future."

The petition alleges sufficient facts to state a cause of action against defendant Lange for intentional infliction of emotional distress. The issue of consent would be an affirmative defense.

## NEGLIGENCE

Plaintiff's petition also states a cause of action against the Archdiocese for negligence.

Nebraska has recognized that an employer is subject to liability for harm to third persons resulting from the employer's negligent selection of an improper employee. *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986). To state a cause of action for negligence, one must plead facts

from which it can be inferred that the defendant owed a duty to protect the plaintiff from injury, that the defendant failed to discharge that duty, and that damage proximately resulted from such failure. *Christianson v. Educational Serv. Unit No. 16*, 243 Neb. 553, 501 N.W.2d 281 (1993).

In *Destefano v. Grabrian*, 763 P.2d 275, 288 (Colo. 1988), the following allegations were held to state a viable claim for negligent supervision:

> "Defendant Diocese of Colorado Springs knew or should have known that Defendant Grabrian was engaging in conduct which was outrageous, negligent, and a breach of his fiduciary duty, and Defendant Diocese owed a duty of supervision of said Defendant Grabrian to the public and breached said duty, causing the injuries and damages set forth above."

With respect to this cause of action, plaintiff alleged the following:

A. Defendant Archdiocese was negligent as follows:

(1) Hiring Defendant Lange in the position of parish priest in Plaintiff's parish.

(2) Failing to properly investigate Defendant Lange's background by inquiring into his relations with other women while he was acting as a parish priest in other parishes when they [sic] knew, or should have known, that he had been actively involved with relationships with women in violation of his vows of celibacy on more than one occasion.

(3) Failing to train Lange to avoid sexual contact with parishioners.

(4) Failing to supervise Lange in connection with his pastoral duties with respect to his relations with female parishioners when they [sic] knew, or should have known, that he had sexual affairs in the past.

(5) Failing to remove Lange from a position of pastoral responsibility when the Defendant knew, or should have known, of Lange's sexual involvement with the Plaintiff.

From these allegations it can reasonably be inferred that the Archdiocese owed a duty to plaintiff, that it failed to discharge that duty, and that plaintiff's severe emotional distress

proximately resulted from that failure. Plaintiff's petition therefore states a cause of action for negligence against the Archdiocese. The demurrer, therefore, should have been overruled in this respect also.

### BREACH OF FIDUCIARY DUTY

The majority also rejected the third cause of action claimed by plaintiff, breach of fiduciary duty. In *Destefano v. Grabrian, supra*, the Supreme Court of Colorado held a cause of action for breach of fiduciary duty was stated where a woman alleged a member of the clergy had sexual intercourse with her while he was providing her with marriage counseling. The fiduciary duty, the court said, was created by his undertaking to counsel the woman. It was not created by the fact that he was a clergy member. The court stated:

> If the alleged conduct of Grabrian [the clergy member] was dictated by his sincerely held religious beliefs or was consistent with the practice of his religion, we would have to resolve a difficult first amendment issue. This, however, is not the case. It has not been asserted that Grabrian's conduct falls within the practices or beliefs of the Catholic church.

763 P.2d at 284. Likewise, here there has been no assertion that Lange's conduct falls within the practices or beliefs of the Catholic Church. Thus, there is no difficult First Amendment issue to confront.

Lange's duty to plaintiff, given the nature of the counseling relationship, was to help her with family matters. See *Destefano v. Grabrian, supra*. Seduction of plaintiff, if proved, would be an obvious breach of that duty. A person standing in a fiduciary relationship with another is subject to liability for harm resulting from a breach of the duty imposed by the relationship. Restatement (Second) of Torts § 874 (1979). Lange could, if the allegations contained in the petition are proven, be subject to liability for any harm he caused.

For the reasons cited, I would reverse the judgment of the district court.

SHANAHAN, J., joins in this dissent.