JUDY IWANSKI, APPELLANT, V. WILLIAM GOMES, APPELLEE.

611 N.W.2d 607

Filed June 9, 2000.    No. S-98-374.

Vincent M. Powers for appellant.

Gregory S. Heier and Mark A. Christensen, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## INTRODUCTION

Judy Iwanski sued William Gomes, a physician, seeking damages resulting from a sexual relationship gone awry, claiming intentional infliction of emotional distress and professional negligence. After the district court granted partial summary judgment in favor of Gomes, the remaining allegations were dismissed by Iwanski, and she appealed.

The resolution of this appeal depends on our determination of two issues. The first issue is whether the district court erred by concluding that Gomes' conduct did not rise to the level of

intentional infliction of emotional distress as a matter of law when Iwanski engaged in sexual relations with Gomes after confiding in him regarding marital stress and other difficulties she was experiencing. Second, we must also determine whether a physician commits professional negligence by engaging in sexual relations with a patient outside of the physician-patient relationship.

## FACTUAL BACKGROUND

Gomes is licensed to practice medicine in the State of Nebraska. In March 1988, Iwanski made an appointment to see Gomes at his medical office in Grand Island for treatment regarding a constant lack of energy, marking the commencement of a physician-patient relationship between the parties. This physician-patient relationship between Iwanski and Gomes continued over the course of the 5 years immediately following Iwanski's initial visit. During this time period, Gomes continued to provide medical services to Iwanski until June 2, 1993.

A sexual relationship between Iwanski and Gomes also commenced in March 1988, shortly after Iwanski's initial visit to Gomes' office. At the initial appointment, Gomes indicated that Iwanski could confide in him regarding various incidents of stress in her life should she wish to do so. Admittedly aware that Gomes was not a psychologist or a psychiatrist, Iwanski met Gomes at a Bosselman's truckstop near Grand Island a few days after the March appointment. At the truckstop, Iwanski got into Gomes' van, and the parties drove to Mormon Island State Park. While at Mormon Island, Iwanski discussed with Gomes some of the stress in her life; at the conclusion of their conversation, the parties engaged in sexual intercourse.

Nearly 5 years after the sexual relationship began, Iwanski, a registered nurse, was hired by Gomes on January 7, 1993. Iwanski continued to work under the employ of Gomes until approximately February 19, 1994. On several occasions between March 1988 and January 1994, Iwanski and Gomes took part in sexual relations in various locations, most of which occurred at Gomes' office during working hours. Iwanski testified that Gomes would oftentimes pass her in the office hallway and request that she accompany him into his office, where the

parties would engage in various sexual contacts, including but not limited to sexual intercourse. Gomes' requests were not always honored, as Iwanski testified that on numerous occasions, she would either reject his offers or refuse to accompany him into his office.

On June 2, 1993, Gomes conducted a Pap smear and accompanying examination on Iwanski after Iwanski requested that he do so. After the examination was completed, the parties engaged in sexual intercourse. There is no dispute as to whether Gomes had finished the examination when the sexual encounter took place, as Iwanski testified that the examination was completed before the parties had sex. Gomes' testimony is to the same effect.

The parties have stipulated that a disagreement exists over whether the final sexual contact between the parties occurred in January 1994 or on June 2, 1993. As to the disputed incident in January 1994, Iwanski testified that the incident occurred upon the request of Gomes, while Gomes maintains that the incident never occurred and that June 2, 1993, was the date of the final sexual encounter between the parties. In any event, the record reveals that the physician-patient relationship between the parties ended as of June 1993. Assuming, as we must when determining if summary judgment was properly granted, that the January 1994 incident did occur, Iwanski asserts that it occurred while she was still working as a nurse in Gomes' office. Iwanski testified that this incident occurred toward the end of the workday, at which time she disrobed and had sex with Gomes.

Subsequent to the termination of the physician-patient relationship and to the termination of the sexual relationship, Iwanski became suicidal and was unable to work full time as a nurse. Iwanski sought counseling, which she claims was unsuccessful. Attributing severe emotional distress to the lingering effects of her defunct relationship with Gomes, Iwanski brought this lawsuit seeking recovery on the theories of intentional infliction of emotional distress and professional negligence on the part of Gomes.

Gomes moved for summary judgment, which was granted in part by the district court upon a determination that Gomes' conduct did not rise to the level of intentional infliction of emo-

tional distress as a matter of law. Summary judgment was also entered in favor of Gomes on the theory of professional negligence on the ground that the sexual contact between the parties was not sufficiently linked to the medical treatment provided by Gomes. Summary judgment was denied, however, as to any acts arising in the course of medical treatment from and after June 2, 1993, the date before which the statute of limitations would bar recovery. Thereafter, Iwanski moved to dismiss the remaining allegations, and the district court entered a final order dismissing the operative petition. Iwanski timely appealed the final judgment.

## ASSIGNMENTS OF ERROR

Iwanski alleges, restated, that the district court erred in determining that (1) the sexual relationship and sexual contacts between Gomes and Iwanski did not rise to the level of intentional infliction of emotional distress as a matter of law and (2) the sexual relationship and sexual contacts between Iwanski and Gomes did not give rise to a claim for professional negligence.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Olsen v. Farm Bureau Ins. Co., ante* p. 329, 609 N.W.2d 664 (2000). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Sherrets, Smith v. MJ Optical, Inc., ante* p. 424, 610 N.W.2d 413 (2000); *Olsen v. Farm Bureau Ins. Co., supra.*

## ANALYSIS

### Intentional Infliction of Emotional Distress

Iwanski's first assignment of error alleges that the district court erred in relying on *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. 715, 508 N.W.2d 907 (1993), to conclude that

Gomes' conduct did not rise to the level of intentional infliction of emotional distress as a matter of law. We held in *Schieffer* that a priest's sexual relationship with a member of his church who was at the same time seeking counseling from him for emotional difficulties did not give rise to a claim of intentional infliction of emotional distress. *Schieffer* involved "conduct between consenting adults," and we noted that the allegations in that case fell far short of alleging that the plaintiff was incapable of consenting to what took place. 244 Neb. at 718, 508 N.W.2d at 911. After having determined that the sexual relationship in *Schieffer* was purely consensual, we affirmed the trial court's sustaining of the defendants' demurrer.

As recognized in *Schieffer* and its progeny, this court has long held that three elements must be alleged and proved before a plaintiff can recover on a cause of action for intentional infliction of emotional distress. To recover for intentional infliction of emotional distress, a plaintiff must prove the following: (1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. *Brandon v. County of Richardson*, 252 Neb. 839, 566 N.W.2d 776 (1997); *Schieffer v. Catholic Archdiocese of Omaha, supra*. With the foregoing in mind, we must determine if the record contains sufficient evidence to establish a genuine issue of material fact as to whether Gomes' conduct meets this test.

We explained in *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. at 719, 508 N.W.2d at 911: "A sexual relationship between two consenting adults is not outrageous conduct such as to give rise to a claim for intentional infliction of emotional distress. This seems especially true given the fact that [there was] an approximate 7-year sexual relationship." In the instant case, Iwanski and Gomes entered into a sexual relationship in March 1988 that continued until at least June 1993. The relationship continued for 5 years, and the mere fact that Iwanksi's relationship with Gomes lasted 5 years instead of 7 is not sufficient to distinguish this case from *Schieffer*.

Iwanski maintains that this case differs from *Schieffer* because in that case this court noted:

> There is no allegation that the defendant used force or fraud to accomplish his sexual relations with the plaintiff during the period from 1982 to 1989. The amended petition does allege that the plaintiff was "vulnerable" because of "prior emotional problems." This allegation falls far short of alleging that the plaintiff was incapable of consenting to what took place.

*Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. 715, 718, 508 N.W.2d 907, 911 (1993). Iwanski attempts to distinguish *Schieffer* by alleging that she was in a vulnerable position rendering her unable to consent, because of the transference doctrine, as well as relying on the fact that Gomes was her employer during a significant portion of the sexual relationship. Iwanski submits that she was unable to consent to the sexual relationship due to the pressures exerted on her by the surrounding circumstances, rendering Gomes' conduct outside the parameters of *Schieffer*. The record does not support Iwanski's allegations.

Iwanski's contention that her allegations of a nonconsensual relationship are sufficient to survive summary judgment confuses the standard by which we review a trial court's ruling on a demurrer with the standard by which we review a grant of summary judgment. In *Schieffer*, we suggested that allegations of the relationship being nonconsensual may have been useful to the plaintiff therein because in an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. See, *Danler v. Rosen Auto Leasing, ante* p. 130, 609 N.W.2d 27 (2000); *Prokop v. Hoch*, 258 Neb. 1009, 607 N.W.2d 535 (2000). However, we do not accord the same deference to the allegations in the petition when reviewing a trial court's grant of summary judgment.

■ Iwanski's bare assertions that her relationship with Gomes was nonconsensual may have been sufficient to overcome a demurrer as in *Schieffer*, but such allegations are not necessarily sufficient to overcome Gomes' motion for summary judgment. To survive summary judgment, Iwanski must do more than

merely allege that the relationship was nonconsensual; she must present evidence that such was the case. After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998). Thus, summary judgment was improper only if Iwanski has presented evidence giving rise to a genuine issue of material fact as to the consensual nature of the relationship.

The record is devoid of evidence supporting the contention that Iwanski was unable to consent to the sexual relationship. Iwanski testified that at one point during the relationship, she thought that her having sex with Gomes was "acceptable because [she] felt at least he cared or had some love for [her]." Not only does Iwanski's own testimony indicate that she was able to consent, but also that Iwanski was aware of the decisions she was making as she was engaging in the sexual acts with Gomes. Furthermore, there were times throughout the relationship when Iwanski conveyed to Gomes that she did not want to have sex with him, indicating that she did in fact withhold her consent when she chose to do so. At the very most, the record indicates not that the relationship between Iwanski and Gomes was nonconsensual, but only that Iwanski had feelings of regret about the relationship to which she had consented. The record clearly shows that Iwanski not only had capacity to withhold her consent, but that she did so on many occasions.

Because there is no evidence to support Iwanski's claim of intentional infliction of emotional distress based on a nonconsensual sexual relationship, we conclude that the district court was correct in ruling that Gomes' conduct did not rise to the level of intentional infliction of emotional distress. Therefore, Iwanski's first assignment of error is without merit.

PROFESSIONAL NEGLIGENCE

Iwanski next contends that the district court erred in determining that the sexual relationship and sexual contacts between

Iwanski and Gomes did not give rise to a claim for professional negligence. In other words, we must determine if a doctor commits malpractice by engaging in sexual relations or having consensual sex with an individual with whom the doctor concurrently maintains a physician-patient relationship.

In a cause of action alleging professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was a proximate cause of the plaintiff's alleged injuries. See *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000). The plaintiff must prove each essential element of the claim asserted by a preponderance of the evidence. *Id.* Thus, Iwanski must show that Gomes' participation in a consensual sexual relationship with her, which was separate and distinct from the physician-patient relationship concurrently existing between them, fell below the generally recognized standard of care for the provision of medical services.

This court has never directly ruled upon the issue of whether it constitutes professional negligence for a physician to engage in a sexual relationship or sexual contacts with a patient apart from the physician-patient relationship. A number of courts that have addressed this issue, or similar issues regarding professional liability insurance contracts, often commence their analysis with a discussion of *Marx v. Hartford Acc. & Ind. Co.*, 183 Neb. 12, 157 N.W.2d 870 (1968).

*Marx v. Hartford Acc. & Ind. Co.* was a case in which this court set out to define "professional services" in the context of a dispute over whether certain property damages were covered by a professional liability insurance policy. While refilling a hot water sterilizer, Marx's employee, a technician, mistakenly poured benzine instead of water into the sterilization container. Fumes exploded, causing a fire, and extensive damage to the medical building resulted. No patient was present or being treated at the time. In this context, we stated:

> The insurer's liability is thus limited to the *performing or rendering of "professional" acts or services*. Something more than an act flowing from mere employment or vocation is essential. *The act or service must be*

*such as exacts the use or application of special learning or attainments of some kind.* The term "professional" in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. [Citations omitted.] In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.

(Emphasis supplied.) *Marx v. Hartford Acc. & Ind. Co.*, 183 Neb. at 13-14, 157 N.W.2d at 871-72.

Similarly, in determining whether particular actions fall below the applicable standard of care for the rendering of professional services, the acts upon which Iwanski bases her claim must first "be such as exacts the use or application of special learning or attainments of some kind" that would constitute the "performing or rendering of 'professional' acts or services." *Id.* at 13, 157 N.W.2d at 871-72. In order to so qualify, Iwanski must demonstrate that her sexual relationship with Gomes in some way constituted the provision of medical services and that such provision of services was conducted in a manner as to fall below the applicable standard of care. See *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000).

A number of jurisdictions, relying in part on *Marx v. Hartford Acc. & Ind. Co., supra,* have taken the position that sexual contact with a patient does not constitute "professional services," notwithstanding the fact that the sexual contact takes place in a physician's office or that the pretense of medical care is used to catch the victim unaware. See *N.M. Physicians Mut. Liability v. LaMure*, 116 N.M. 92, 860 P.2d 734 (1993). These courts reason that such sexual contacts are "acts that can be accomplished by laypersons untrained in the medical arts. . . . The fact that the acts occurred between a doctor and a patient or former patient is

pertinent *only if the act itself is of a professional nature.*"
(Emphasis in original.) *St. Paul Ins. Co. of Illinois v. Cromeans*,
771 F. Supp. 349, 353 (N.D. Ala. 1991).

We agree that the fact that sexual misconduct occurs in a
medical professional's office "does not automatically transmute
the act into a professional service [because the] location of an
act's occurrence is not determinative of liability." *Lindheimer v.
St. Paul Fire & Marine Ins.*, 643 So. 2d 636, 638 (Fla. App.
1994). When the only connection between the sexual miscon-
duct and treatment is that the activity occurred in the medical
professional's office, such a connection is too remote from the
actual rendering of proper services to impose liability upon the
medical professional for malpractice. See *Roe v. Federal Ins.
Co.*, 412 Mass. 43, 587 N.E.2d 214 (1992).

We conclude, based on the foregoing rationale, that there
must be a causal relationship between the alleged harm and the
complained-of professional act or service. When there is a claim
of medical malpractice based on unwanted sexual contact, the
determination of liability should focus not solely on the locale
of the alleged harm or the professional status of the actor, but,
rather, on the context of the alleged medical service involved in
the action. In other words, it is the physician's deviation from
the recognized medical standard of care *during the course of
treatment* that is the essence of a claim for medical malpractice,
and there must exist a causal relationship between the alleged
harm and the complained-of deviation from that standard of care
in order for liability to attach.

Applying this standard to the case at bar, we conclude that the
district court properly granted Gomes' motion for summary
judgment. As we have previously determined, the evidence
reflects that the relationship between the parties was consensual.
Moreover, as to the specific incident of June 2, 1993, Iwanski
testified that the sexual act took place well after Gomes had
completed the Pap smear and accompanying examination. The
record clearly reveals that the sexual relationship between
Iwanski and Gomes was separate and distinct from the provision
of any medical services Iwanski received from Gomes. While
we in no way condone Gomes' conduct in this matter, the issue
before us is not whether he conducted himself in accordance

with ethical standards applicable to the medical profession, but, rather, whether he inflicted injury by negligently providing medical services to Iwanski. On that point, we must conclude that there is no genuine issue as to any material fact and that the district court properly determined that Gomes was entitled to judgment as a matter of law on the professional negligence cause of action. Consequently, Iwanski's second assignment of error is without merit.

Iwanski finally argues that the district court erred in granting summary judgment because Iwanski alleged that Gomes took advantage of and mishandled the transference phenomenon. This claim is without merit.

Transference has been defined as " '[t]he process whereby the patient displaces on to the therapist feelings, attitudes and attributes which properly belong to a significant attachment figure of the past, usually a parent, and responds to the therapist accordingly.' S. Waldron-Skinner, *A Dictionary of Psychotherapy* 364 (1986)." *St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698, 700 (Minn. 1990). The court went on to explain that "[t]he patient, required to reveal her innermost feelings and thoughts to the therapist, develops an intense, intimate relationship with her therapist and often 'falls in love' with him." *St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d at 700. Even though transference is not confined solely to psychiatric treatment and the mental health profession, it has generally been accepted that mental health professionals expect and even elicit this phenomenon as a regular and accepted part of treatment. *Id.*

Although we have no evidence before us regarding the transference phenomenon and, therefore, we will not opine on the general acceptance of the transference phenomenon in the mental health field, we do note that *transference is not a recognized component in the medical treatment of physical conditions*. See *Odegard v. Finne*, 500 N.W.2d 140 (Minn. App. 1993). Moreover, there is no evidence in the record that the transference phenomenon was a factor in the instant case. Iwanski cannot seek to avoid summary judgment by relying on bare assertions that Gomes mishandled the transference phenomenon when she has produced no evidence that the phenomenon was

ever present in this case. See *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998).

## CONCLUSION

Having considered each of Iwanski's assignments of error and finding them to be without merit, we affirm the judgment of the district court.

AFFIRMED.

WRIGHT, J., not participating.