DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant John D. Morris has appealed from a decision of the Summit County Court of Common Pleas that rendered judgment in favor of Plaintiff-Appellee Jon Eric Morris on his claim of legal malpractice. This Court affirms.
 I {¶ 2} On June 29, 2001, Appellee filed an action against Appellant, a professional attorney, for legal malpractice. Appellee alleged that he hired Appellant for his legal services in aiding Appellee in completing a managerial agreement, purchase agreement, and liquor license transfer with Art's Daughters, Inc.
 {¶ 3} Appellee claimed in his complaint that, from April 29, 1998 through July 2000, Appellant "commenced a legal procedure to complete the sale and transfer of Art's Daughters Inc.'s liquor license" to Appellee. However, Appellee alleged that Appellant failed to exercise reasonable care, skill, and diligence in obtaining the liquor license because Appellee was never able to procure said license. Appellee alleged that Appellant breached his legal duty, and that as a consequence of that breach, Appellant directly and proximately caused Appellee damages, including, but not limited to, the loss of $20,000 as payment for the liquor license, criminal arrest, loss of earnings, serious emotional distress, loss of enjoyment of life and lost expenses.
 {¶ 4} Prior to trial, the case was referred to a court mediator. However, mediation was unsuccessful, and the case was referred back to the trial court. Before a jury trial was to proceed, Appellee filed a motion in limine, whereby he requested the trial court to exclude any evidence of Appellee's felony conviction which occurred after he retained Appellant's legal services and before he sustained his alleged economic damages. The trial court did not rule on Appellee's motion until the case proceeded to trial, during which time both parties presented arguments outside the hearing of the jury. After oral arguments, the trial court granted Appellee's motion.
 {¶ 5} The jury returned a verdict in favor of Appellee and awarded him damages in the amount of $70,007.97. Appellant filed a motion for judgment notwithstanding the verdict, or in the alternative, motion for a new trial; Appellee filed a brief in opposition. The trial court denied Appellant's motion. Appellant has timely appealed, asserting two assignments of error.
 II Assignment of Error Number One
"THE TRIAL COURT ABUSED [ITS] DISCRETION IN FAILING TO ADMIT EVIDENCE OF [APPELLEE'S] PRIOR FELONY CONVICTION."
 {¶ 6} In Appellant's first assignment of error, he has argued that the trial court abused its discretion when it failed to admit evidence of Appellee's prior felony conviction. Specifically, Appellant has contended that Appellee's prior conviction was properly admissible because it went to the ultimate issue of proximate cause and it "could also have been used to attach [sic] the credibility of [Appellee]."
{¶ 7} This Court has previously explained that:
"A motion in limine is a request for a preliminary order regarding the admissibility of evidence that a party believes may be improper or irrelevant. The purpose of a motion in limine is to alert the court and counsel of the nature of the evidence in order to remove discussion of the evidence from the presence of the jury until the appropriate time during trial when the court makes a ruling on its admissibility." (Citations omitted.) Nurse Griffin Ins. Agency, Inc. v. Erie Ins.Group (Nov. 7, 2001), 9th Dist. No. 20460, at 3.
 {¶ 8} Furthermore, an appellate court does not need to determine the propriety of an order granting or denying such a motion unless the claimed error is preserved by an objection, proffer, or ruling on the record at the proper point during the trial. Harbottle v. Harbottle, 9th Dist. No. 20897, 2002-Ohio-4859, at ¶ 55; Garrett v. Sandusky
(1994), 68 Ohio St.3d 139, 141. This is because a "ruling on a motion in limine is only a preliminary ruling. Any objection to the denial of a motion in limine must be renewed once the evidentiary issue is presented during trial in order to properly preserve the question for appeal."Dobbins v. Kalbaugh, 9th Dist. Nos. 20714, 20918, 20920, 2002-Ohio-6465, at ¶ 20, appeal not allowed (2003), 98 Ohio St.3d 1513,2003-Ohio-1572, citing State v. Hill (1996), 75 Ohio St.3d 195, 202-203. Therefore, a party who has been prohibited from presenting certain evidence at trial must "seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." Harbottle, supra at ¶ 56, quoting State v.Grubb (1986), 28 Ohio St.3d 199, paragraph two of the syllabus.
 {¶ 9} In the instant case, Appellant properly proffered the substance of the excluded evidence immediately after the trial court granted Appellee's motion in limine. Before Appellant's trial counsel commenced cross-examination of Appellee, trial counsel requested permission to approach the bench. The trial court immediately called a recess, and the following colloquy took place:
"THE COURT: The Court's going to grant the motion in limine in total under [Evid.R. 609].
"We do have a felony, but the felony was committed after the fact and [Evid.R. 609] is subject to — specifically subject to [Evid.R 403] which is the probative value has to outweigh the prejudice.
"So, [Appellant] is going to be prohibited from mentioning any felony of [Appellee] here.
"If he would have brought his character into evidence through his direct, then it would be under a different rule you could have gotten a little further into it, but I think under [Evid.R. 609] and [Evid.R. 403] everything should be prohibited here.
"[APPELLANT'S COUNSEL]: Well, if it please the Court, I mention only that [Evid.R. 609] also provides in (B) a provision where the credibility, i.e., truthfulness of anyone under sentence within ten years can be introduced for that purpose and we are talking in a case like this about who said what to whom and when. That's terribly important.
"THE COURT: Yes, but it is all subject to [Evid.R. 403].
"[APPELLANT'S COUNSEL]: Of course it is.
"THE COURT: Right. So, I don't think that's an absolute right to begin with under [Evid.R. 609]. [Evid.R. 609] is quite lengthy. It's got (A), (B), (C), (D), (E), (F), all right, and (A)(1) is subject to [Evid.R. 403], okay.
"Evidence that a witness is convicted of a crime is admissible if within excess of one year, subject to [Evid.R. 403].
"[Evid.R. 403] is probative value over prejudice, all right.
"[APPELLANT'S COUNSEL]: Well, yesterday, as I recall the request, which was filed ten dates [sic] late, they also said why not just mention the felony, not the specifics of it.
"THE COURT: Well, he had that as a fall back position.
"[APPELLANT'S COUNSEL]: [Appellee's] witnesses already mentioned the criminal charges[.]
"THE COURT: What was [the witness'] testimony in that regard?
"[APPELLANT'S COUNSEL]: The reasons why the [liquor] license could not be transferred, that was number five.
"THE COURT: Well, nevertheless that's all speculative, you know. It's not absolute prohibition regarding transfer of license from what I saw in the motion which the felony precludes a transfer.
"[APPELLANT'S COUNSEL]: Well, that occurred three months before they shut it down.
"THE COURT: I know, but it's all pretty speculative and it happened after the fact. I'm going to grant the motion in total.
"[APPELLANT'S COUNSEL]: Please note my exceptions.
"THE COURT: Okay."
 {¶ 10} It is apparent from the discussion that took place outside the hearing of the jury that Appellant attempted to introduce evidence of Appellee's prior conviction, but was prohibited from doing so when the trial court granted Appellee's motion in limine on the ground that the probative value of the prior conviction was substantially outweighed by the danger unfair prejudice. As Appellant properly preserved the issue of the motion in limine for appeal, we now turn to the propriety of the trial court's decision to overrule Appellant's objections to the exclusion of the evidence. See Sergi v. Sergi (July 31, 1996), 9th Dist. No. 17476, at 19, appeal not allowed (1996), 77 Ohio St.3d 1490 (stating that because a motion in limine is a preliminary ruling, and cannot serve as a basis for error on appeal, an appellate court's review is limited to whether the trial court incorrectly overruled the party's objections at trial).
 {¶ 11} Initially, we note that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court.State v. Sage (1987), 31 Ohio St.3d 173, syllabus. The admission or exclusion of evidence by a trial court will not be reversed on appeal absent a clear and prejudicial abuse of discretion. O'Brien v. Angley
(1980), 63 Ohio St.2d 159, 163. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} Here, the trial court found that Appellee's prior conviction for gross sexual imposition and pandering obscenity was not admissible pursuant to Evid.R. 609 and Evid.R. 403. Evid.R. 609(A) provides, in pertinent part:
"For the purpose of attacking the credibility of a witness:
"(1) subject to Evid.R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted.
"(2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 13} As indicated in Evid.R. 609, a trial court must consider Evid.R. 403 in conjunction with Evid.R. 609. State v. Wright (1990),48 Ohio St.3d 5, syllabus. Under Evid.R. 403, evidence that is otherwise admissible (1) must be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury, and (2) may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence. Therefore, in considering the admission or exclusion of evidence under Evid.R. 609 and Evid.R. 403, a trial judge "has broad discretion in determining the extent to which testimony will be admitted * * *. When exercising this discretion, all relevant factors must be weighed." Wright,48 Ohio St.3d at 8.
 {¶ 14} After reviewing the record, we find that the trial court did not abuse its discretion when it prohibited the admission of Appellee's prior felony conviction on the ground that its probative value was substantially outweighed by the danger of unfair prejudice. Although relevant to the issue of Appellee's credibility, the nature of the charges for which Appellee was convicted would, as the court intimated, have a highly negative impact upon the jury. Moreover, it appears that the conviction occurred more than a year after Appellee hired Appellant to help him obtain a liquor license; this decreased the probative value of the conviction because it made it less likely that the felony conviction prevented Appellee from obtaining a liquor license. The trial court also noted that despite Appellant's argument that a felony conviction was the reason and/or contributing factor to the denial of a liquor license as opposed to the malpractice of Appellant, a felony conviction is not an "absolute prohibition regarding transfer of license from what I saw in the motion which the felony precludes a transfer."
 {¶ 15} Accordingly Appellant's first assignment of error is not well taken.
 Assignment of Error Number Two
"[Appellee] Failed To Establish His Burden Of Proof That The Damages Alleged Were A Proximate Result Of [Appellant's] Breach Of Duty."
 {¶ 16} In Appellant's second assignment of error, he has argued that Appellee failed to establish his burden of proof that the damages alleged were a proximate result of Appellant's breach of duty. Specifically, Appellant has contended that an expert is required to show that an attorney's breach of duty is the proximate cause of a client's economic damages. We disagree.
 {¶ 17} In order to prevail on a legal malpractice claim, Appellee had the burden to prove: (1) an attorney-client relationship existed at the time of the incident; (2) that Appellant breached his duty by failing to provide competent legal services; and (3) that he suffered damages as a proximate result of Appellant's breach of duty. Thomarios v. Lieberth
(Feb. 19, 1992), 9th Dist. No. 15229, at 3, citing Palmer v. Westmeyer
(1988), 48 Ohio App.3d 296, 298; Edward L. Gilbert Co., LPA v. Levy
(Mar. 27, 1996), 9th Dist. No. 17292, at 8. "Generally, expert testimony is required `to establish a claim of legal malpractice based on an alleged failure to exercise the knowledge, skill, and ability ordinarily possessed and exercised by the legal profession similarly situated * * *.'" Levy, supra at 9, quoting Holley v. Massie (1995),100 Ohio App.3d 760, 764. If, however, the breach is so obvious that it can be determined by the court or is within the ordinary knowledge and experience of laymen then an expert is not required. Hooks v. Ciccolini, 9th Dist. No. 20745, 2002-Ohio-2322, at ¶ 10, appeal not allowed,96 Ohio St.3d 1514, 2002-Ohio-4950, certiorari denied (2003),123 S.Ct. 1490, 155 L.Ed.2d 232, citing Bloom v. Dieckmann (1983),11 Ohio App.3d 202, 203.
 {¶ 18} In the case sub judice, Appellant has not argued that Appellee failed to show that an attorney-client relationship existed or that Appellant breached his duty. Rather, Appellant's arguments are directed at Appellee's alleged failure to show through expert testimony that his damages were the direct and proximate result of Appellant's breach of duty. He has contended that "[a] jury cannot determine the proximate cause of an alleged breach of duty unless there is expert testimony in a legal malpractice case that the breach proximately resulted in the alleged damage that [Appellee] was claiming[,]" and that "[b]y [Appellee's] counsel's own admission, no such evidence was presented to the jury at the trial court level."
 {¶ 19} As discussed above, expert testimony may be required to establish the second prong of a legal malpractice claim, namely the professional standard of conduct and the attorney's breach of duty. SeeLevy, supra at 9; Hooks, supra at ¶ 10; Nelson v. Klima (Sept. 15, 1994), 8th Dist. No. 65421, 1994 Ohio App. LEXIS 4059, at *7 ("With regard to the * * * breach of duty, we note that expert evidence is ordinarily necessary to establish the element of breach of the duty of care[.]"). However, it appears that an expert is not required to prove the third prong of a legal malpractice claim, or proximate cause. SeeRobinson v. Calig Handleman (1997), 119 Ohio App.3d 141, 144.
 {¶ 20} In Robinson, a client brought a legal malpractice action against his attorney and the attorney's firm for failing to take his divorce case to trial. The trial court granted the attorney's motion for summary judgment and the client appealed. On appeal, the client contended that the trial court erred in requiring him to prove, in effect, the success he would have achieved had the attorney and her firm taken his divorce case to trial. The appellate court reversed the judgment of the trial court, and specifically rejected the portion of the trial court's decision which inferred that an expert cannot render an opinion as to proximate cause. Robinson, 119 Ohio App.3d at 144. The Robinson court held that "[w]ith appropriate foundation, an expert may opine concerning the proximate cause aspect of a legal malpractice case." (Emphasis added.) Id.
 {¶ 21} As in Robinson, we conclude that an expert may render an opinion on the issue of proximate cause. See Montgomery v. Gooding,Huffman, Kelly Becker (N.D.Ohio. 2001), 163 F. Supp.2d 831, 837
(stating that Ohio law does not require expert witness evidence to establish proximate cause in legal malpractice actions). The issue of proximate cause is generally a question of fact, and is therefore a matter for the jury. Farlow v. Board of County Cmmrs. (Apr. 18, 1979), 9th Dist. Nos. 2812, 2813, at 11; Platinum Fin. Servs. v. Gurney (Oct. 31, 1996), 8th Dist. No. 69481, 1996 Ohio App. LEXIS 4802, at *29, appeal not allowed (1997), 78 Ohio St.3d 1428, citing Merchants Mut. Ins. Co. v.Baker (1984), 15 Ohio St.3d 316. Here, the jury could infer from the evidence presented at trial that Appellant's breach of duty proximately caused Appellee's damages.
 {¶ 22} At trial, Joseph Oliver, the attorney for Art's Daughters, Inc., testified that he entered into an agreement with Appellee, whereby Art's Daughters, Inc. would sell Appellee a liquor license for approximately $20,000. After Appellee and Mr. Oliver orally agreed to the sale of the liquor license, Mr. Oliver stated, he drew up a management agreement, purchase agreement, and lease to effectuate the sale of the license. He testified that the management agreement clearly stipulated that Appellee was prohibited from selling liquor under the license until the license was properly transferred from Art's Daughters, Inc. to Appellee. When Mr. Oliver learned that Appellee was selling liquor under a liquor license that was still in the name of Art's Daughters, Inc., he faxed a letter to Appellant on January 15, 1999. At trial, Mr. Oliver testified to the contents and intent of the faxed letter:
"[In the letter], I'm indicating to [Appellant] that I just learned that [Appellee] was selling alcoholic beverages at the store and I had just learned that the application had not been filed, the application for transfer of permit had not been filed with the Department of Liquor Control. I pointed out that it had been [Appellee's] obligation under the agreement to file that application. I pointed out that pursuant to the management agreement [Appellee] did not have the right to sell liquor at the premises until the application had been approved. * * * And I think the clear intent was that [Appellee] should stop [selling liquor] or else make other arrangements to get permission to do that."
 {¶ 23} Mr. Oliver testified that Appellant sent a reply to the January 15, 1999 fax, which read: "Reply: FYI: My client is operating pursuant to management agreement, John Morris."
 {¶ 24} Appellee testified that he initially discussed purchasing Art's Daughters, Inc.'s liquor license without Appellant's legal advice, and that he only required Appellant's services after Mr. Oliver had reduced their oral negotiations to writing. Appellee stated that he asked Mr. Oliver to send copies of the written agreements to Appellant, and he asked Appellant to "check it over." Appellee further testified that before he signed the agreements, he talked to Appellant and was told that it was "okay to sign them." Appellee stated that he did not personally read the contents of the agreements, and when asked why he did not read the agreements before signing them he replied: "That's what I hired a lawyer for."
 {¶ 25} Appellee stated that after signing the agreements, he began to make further preparations for the opening of his club/bar. Although he stated that he had entered into a lease agreement for the bar before he agreed to purchase Art's Daughters, Inc.'s liquor license, he testified that after he signed the agreements he remodeled the interior of the bar and purchased such items as bottled liquor, beer, drinking glasses, a software package called "digital dining," and bar signs.
 {¶ 26} Appellee further testified that after receiving a liquor license, which was still in the name of Art's Daughters, Inc., he began to sell liquor in October or November 1998. Appellee stated that in June 2000, police arrived at his bar and arrested Appellee for selling liquor without a permit. Appellee explained: "Well, [the police] shut the bar down, they hauled out all the liquor, they filed charges against me. They took my business." When asked if Appellant knew that he was selling liquor under a liquor license that was still in the name of Art's Daughters, Inc., Appellee replied: "Yes."
 {¶ 27} Alan Matavich, an attorney practicing in Youngstown, Ohio, testified on behalf of Appellee as an expert witness. Mr. Matavich stated that he reviewed the management agreement, purchase agreement, and lease, along with other items such as letters, liquor license applications, and copies of permits. Mr. Matavich testified that he believed Appellant deviated from the standard of care when he advised Appellee to sign the purchase agreement because "the purchase and sale agreement [are] weighted almost entirely in favor of the seller." He further explained:
"That purchase and sale agreement called for the entire purchase price for the liquor permit to be paid to the seller upon the filing of the permit with the Division of Liquor Control.
"It didn't provide to hold back any money to satisfy delinquent taxes.
"There was some clauses in the agreement that if the deal did not go through, that the money was to be paid back to the purchaser[.]
"Well, the money was already gone and in my opinion an attorney should never have advised his client that it was acceptable to sign that agreement."
 {¶ 28} Mr. Matavich also believed that Appellant deviated from the standard of care when Appellant advised Appellee to sign the management agreement because the management agreement "specifically said that [Appellee] was not allowed to use the permit to sell alcoholic beverages. In other words, that language, in my opinion, defeated the entire purpose of a managerial agreement." Mr. Matavich further stated that Appellant deviated from the standard of care when he attempted to transfer the liquor license from the transferor, Art's Daughters, Inc., to the transferee, Appellee. He explained that Appellant failed to properly fill out the application for the liquor license because Appellant listed the applicant as an individual, but noted that the applicant was signing in the capacity of a limited liability company. The difference, Mr. Matavich explained, "sends conflicting signals as to who actually is asking for the transfer, is it an individual by the name of Jon Eric Morris or is it a limited liability company." Mr. Matavich testified that the incorrectly submitted application caused an unnecessary delay in processing.
 {¶ 29} Mr. Matavich also testified that more delays were caused because, on the advice of Appellant, Appellee was paying taxes in the name of Top Shelf, Inc. According to Mr. Matavich, Appellee should have been paying taxes in the name of Art's Daughters, Inc. until the liquor license was properly transferred.
 {¶ 30} John Giua, an attorney practicing in Canton, Ohio, testified on behalf of Appellant as an expert witness. Mr. Giua testified that some of the problems Appellee experienced in attempting to obtain a liquor license were not the fault of Appellant. He stated that when Appellant initially filed an application to obtain a liquor license it was delayed because the name of the seller was incorrect; Mr. Oliver failed to transfer the liquor license from Arthur Ealy, now deceased, to Art's Daughters, Inc. When asked during direct examination if he had an opinion after "having gone through all of these documents, based upon your training and experience and education that the handling of this matter insofar as [Appellant] for trying to reconstruct and put this thing together and transfer a license was within the standard of care for trying to get a license transferred[,]" Mr. Giua responded: "I do not believe that [Appellant] deviated from the standard of care in this particular manner. This matter was a very unusual situation." Mr. Giua later explained on cross-examination that his opinion was based on his belief that Appellant did not have any involvement in Appellee's signing of the agreements.
 {¶ 31} On cross-examination, Mr. Giua also stated that the management agreement was pro-seller because it was "a one-way, one-sided type of arrangement" that benefited the seller. Further, when asked if it "[w]ould * * * have been a deviation from the standard of care if [he] would have advised [Appellee] to sign [the management agreement,]" Mr. Giua replied: "I would think so." Additionally, Mr. Giua testified that if Appellant told Appellee to sign the agreements "without any other discussion, I would think it would be bad advice."
 {¶ 32} Appellant testified that he agreed with Mr. Matavich and Mr. Giua, in that he also believed that "[the agreements] were bad documents, I don't dispute that." He testified that he received copies of the documents from Appellee, but he stated that he did not review the documents. Despite this testimony, he admitted that he told Appellee to "`[g]o ahead and sign [the agreements]," based upon what Appellee and Mr. Oliver told him. He further stated that he believed Appellee could legally sell liquor under the management agreement, despite the fact that the liquor license issued in the name of Art's Daughters, Inc. was never transferred to Appellee and the terms of the management agreement expressly prohibited the sale of liquor until the liquor license was transferred to Appellee. Appellant explained:
"So the managerial agreement prohibition against selling, and this has always been my legal opinion and it will be my opinion until the day that I die, is that that provision [which prohibited Appellee from selling liquor until the liquor license was transferred to him] was effectively waived by [Joseph] Oliver saying that Art's Daughters, Inc. was selling liquor at State Road effective and he says in one document they stopped selling [November 15, 1998]."
 {¶ 33} On cross-examination, Appellant stated that Appellee never hired him to look at the management agreement, purchase agreement, and lease. Appellant stated that despite Mr. Oliver's testimony that he talked to Appellant about the documents before Appellee signed them, Appellant never approved the documents for signing. Although Appellant's testimony clearly conflicted with both Mr. Oliver's and Appellee's testimony that Appellant did, in fact, approve the signing of the documents, Appellant admitted on cross-examination that "[i]n hindsight and me sitting here today, no, I wouldn't have recommended [Appellee] sign those documents."
 {¶ 34} As an expert was not required to testify regarding proximate cause, and the evidence presented at trial was sufficient to allow a jury to determine that Appellant's breach of duty proximately caused Appellee's damages, we find that Appellant's second assignment of error lacks merit.
 III {¶ 35} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
BATCHELDER, J. CONCUR