HOLLEY et al., Appellants,

v.

MASSIE et al., Appellees.

[Cite as *Holley v. Massie* (1995), 100 Ohio App.3d 760.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 94–CA–79.

Decided Feb. 1, 1995.

*James P. Jones,* for appellants.

*Jane M. Lynch,* for appellees.

BROGAN, Judge.

The appellants, Brenda and Carl Holley, appeal from the order of the Greene County Common Pleas Court granting summary judgment upon their claim of legal malpractice against the appellees, Marshall Massie and Mary Nash.

In February 1987, the Holleys retained Marshall Massie to represent them in a personal injury suit arising from an automobile accident. In the complaint, the Holleys contended they were injured when their car was rear-ended in a chain-reaction accident caused by the defendants, Nola Kinzer and Linda Leshan.

The Holleys sought damages for medical expenses in excess of $40,000, lost wages of approximately $9,000, and damages for permanent injury, pain and suffering, and loss of consortium. On February 11, 1991, the court awarded Brenda Holley $10,800 and Carl Holley $5,000 upon the jury's verdict.

In support of their motion for summary judgment, the appellees attached the discovery depositions of the Holleys, Professor Thomas Hagel, and portions of the trial transcript.

Carl Holley testified that he was working as a welder/fitter at American Buildings at the time of the accident. He testified he suffered lower back and neck injuries as a result of the accident. He said his neck injury cleared up after six months and he still gets lower back pain occasionally.

In his deposition, Holley testified he told the jury he lost $10,000 in wages, and about the pain and suffering caused by the accident. He also testified that he informed the jury about the activities he could not do because of his injuries. He said Massie fell asleep during a videotape deposition of one of the doctors and again during the questioning of a witness by co-counsel Nash.

Brenda Holley testified she was unhappy with her representation by Massie because he fell asleep during the trial. She said one of the jurors told her after the trial that all of the jurors felt that when Massie went to sleep he must have felt he didn't have a case or didn't care or both.

Professor Thomas Hagel of the University of Dayton Law School testified he was retained to examine portions of the trial transcript, medical records, pleadings, and exhibits to determine whether the appellees were guilty of malpractice.

Hagel testified he believed the appellees were guilty of malpractice in three areas: (1) the handling of certain evidentiary matters at trial, (2) failing to properly pursue hedonic damages, and (3) Massie's breaching his duty to his clients by falling asleep at the trial.

Hagel testified he reviewed a list of exhibits prepared by Massie prior to trial and that portion of the trial record wherein the court ruled upon the admissibility

of exhibits. He testified he never examined the exhibits themselves but concluded that Massie was guilty of malpractice in not gaining the admission of Exhibit 4, which was an estimate of the damage done to the Kinser vehicle, and Exhibit 5, which was an itemized list of medical bills totalling approximately $15,000.

Hagel admitted he did not know whether Exhibit 5 was a cumulative summary of other medical bills that were admitted in evidence. He admitted he did not know whether photographs admitted at trial adequately depicted the damage to the Kinzer vehicle. Hagel contended that the appellees should have presented documentary evidence of Carl Holley's lost wages, i.e., Exhibit 16. He admitted he did not have access to the entire transcript, and he acknowledged Holley may testify concerning his lost wages.

Hagel testified the appellees should have gained admission of Exhibits 21, 26 and 27. Exhibit 21, on counsel's list, was listed as medical records of Greene Memorial Hospital, May 5, 1987, Exhibit 26 was the medical records from Dr. Raj Patel, and Exhibit 27 was the medical records of Dr. Thomas Goodall.

Hagel admitted Exhibit 27 would have been cumulative evidence if Dr. Goodall discussed the content of those records during his trial testimony.

Hagel testified that he understood that there was a significant amount of evidence from the plaintiffs' "laying out the foundation for receiving damages for the loss of enjoyment of life," but that appellees never asked for a jury instruction that would request compensation for this loss.

Last, he testified Massie breached his duty of reasonable care to his clients by falling asleep at the trial. He noted that it was reported to him that a juror reported that Massie's conduct indicated either "he didn't have that strong a case or he doesn't care about his case."

The judge instructed the jury at the conclusion of the trial in pertinent part:

"As to each Plaintiff you will consider the nature and extent of the injury; the effect upon physical health; the pain that was experienced; the ability or inability to perform usual activities; the earnings that were lost and/or the reasonable cost of necessary medical and hospital expenses incurred by the Plaintiff. From these you will determine what sum will compensate that Plaintiff for the injury to date."

The appellants provided a brief portion of the trial transcript, wherein the jury submitted the following question: "Any legal guidance on pain and suffering damages[?]" The record reflects that the court informed the jury they would be required to rely on the instructions previously given by the court and no objection to such action was lodged by Massie.

The appellants have raised a single assignment that the trial court erred in granting summary judgment to the appellees.

■ To establish a cause of action for legal malpractice relating to civil matters, the plaintiff must establish an (1) attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *McInnis v. Hyatt Legal Clinics* (1984), 10 Ohio St.3d 112, 10 OBR 437, 461 N.E.2d 1295.

■ In order to establish a claim of legal malpractice based on an alleged failure to exercise the knowledge, skill, and ability ordinarily possessed and exercised by the legal profession similarly situated, expert testimony is necessary to establish such standards. *Gibbons v. Price* (1986), 33 Ohio App.3d 4, 514 N.E.2d 127; *Bloom v. Dieckmann* (1983), 11 Ohio App.3d 202, 11 OBR 298, 464 N.E.2d 187.

In *Howard v. Sweeney* (1985), 27 Ohio App.3d 41, 27 OBR 43, 499 N.E.2d 383, the Cuyahoga County Court of Appeals held that an attorney cannot be held liable for malpractice for lack of knowledge as to the true state of the law where a doubtful or debatable point is involved.

■ Whether the appellants were entitled to a separate instruction on hedonic damages apart from the instruction on pain and suffering was certainly debatable at the time of the appellants' trial. In *Fantozzi v. Sikel Mfg. Co.* (Apr. 12, 1991), Lucas App. No. E–89–36, unreported, 1991 WL 53841, reversed *sub nom. Fantozzi v. Sandusky Cement Prod. Co., infra,* the Lucas County Court of Appeals held the following:

"Because Fantozzi has not asserted a claim for negligently inflicted emotional and psychiatric injuries, we conclude that the *Binns* [*v. Fredendall* (1987), 32 Ohio St.3d 244, 513 N.E.2d 278] holding is not applicable to the case before us. We interpret the *Binns* holding as being applicable only to actions where severe emotional injuries have resulted from the plaintiff's involvement in and witnessing of an accident in which a loved one is killed or injured. The present case involves a situation in which the plaintiff claims loss of enjoyment of life due to the physical injuries themselves. *There is a void in Ohio case law on this issue. While there is authority in other states to support both views, we conclude that under these circumstances, damages for loss of enjoyment of life fall within the confines of damages for pain and suffering.* We therefore find that the trial court's instruction and inclusion of loss of enjoyment of life as an item of damages on the interrogatory was in error." See, also, *Newton v. Zamow* (May 1, 1980), Cuyahoga App. No. 40884, unreported.

The trial court appropriately granted summary judgment on the appellants' claim that appellees should have sought a separate instruction on the recovery of hedonic damages. In *Fantozzi v. Sandusky Cement Prod. Co.* (1992), 64 Ohio St.3d 601, 597 N.E.2d 474, the Ohio Supreme Court held that one's ability or inability to perform usual activities is a separate and distinct element of damages. Prior to *Fantozzi*, these damage claims were included as part of the elements of pain and suffering. The instruction as given in this case provided for the recovery of such damages as a part of pain and suffering.

■ We agree with the trial court that Professor Hagel's testimony as to the appellants' alleged mishandling of trial exhibits presented no triable issue of malpractice.

Professor Hagel admitted that he concluded that appellants were derelict in their responsibility to obtain the admission of certain exhibits by reference to Marshall Massie's pretrial exhibit list. He admitted he was never presented with a full transcript of the trial, nor did he examine the exhibits themselves. Without examination of the entire trial transcript, neither Professor Hagel nor we are in a position to know whether the exhibits should have been submitted for consideration by the jury.

■ The appellees argue that the trial court properly granted summary judgment on the malpractice claim emanating from Marshall Massie's alleged falling asleep on two occasions during the trial. The appellees argue the trial court's decision was correct because Professor Hagel's opinion was based upon double hearsay testimony and because the testimony concerning the juror's statement violates the *aliunde* rule.

Evid.R. 703 provides that the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing. See *State v. Solomon* (1990), 59 Ohio St.3d 124, 570 N.E.2d 1118.

Civ.R. 56(C) also expressly provides that no evidence or stipulation may be considered by the court in ruling upon the motion except as stated in the rule. Although the trial court did not specify its reasons for granting summary judgment, we must presume the court considered only competent evidence under the Civil Rule. Since Professor Hagel's opinion on proximate cause and damages was based on the double hearsay of Brenda Holley, the trial court properly disregarded the expert's opinion. Similarly, the *aliunde* principle precludes foundation evidence from third persons who have heard jurors make statements

tending to impeach their verdicts but who do not have firsthand knowledge of the misconduct. *Dodd v. McCammon* (1920), 14 Ohio App. 160, 32 Ohio C.A. 68.

Evid.R. 606(B) provides:

"(B) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes."

The first sentence of Evid.R. 606(B) represents the embodiment of the common-law tradition of protecting and preserving the integrity of the jury room by declaring jurors generally incompetent to testify as to any matter directly attendant to, and purely internal to, the emotional or mental processes of the jury's deliberations. The principle is designed to ensure the finality of verdicts *and* to protect jurors from being increasingly harassed by defeated parties. In the absence of such protection, the confidentiality and candor of the jury room would become the constant subject of public investigation in derogation of the time-honored and highly valued freedom of conference critical to the entire scheme of trial by jury. See Weissenberger, Ohio Evidence (1985), Section 606.2; *Mattox v. United States* (1892), 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 18 OBR 322, 480 N.E.2d 794. Evid.R. 606(B) includes within its proscriptions evidence from third parties concerning statements from jurors.

The rule requires a foundation from nonjuror sources tending to establish at least prima facie evidence that extraneous prejudicial evidence was considered by the jury or that external influence was brought to bear on the jury. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54.

Assuming that appellee Massie fell asleep twice during the trial, there was no evidence aside from the juror's affidavit that the jury was affected by Massie's conduct. Long ago, the Ohio Supreme Court held that misconduct of a jury will

not be presumed, but must be affirmatively proved. The law will presume proper conduct on their part. Clear and positive evidence "aliunde" is necessary to overcome this presumption. *Lund v. Kline* (1938), 133 Ohio St. 317, 10 O.O. 411, 13 N.E.2d 575.

We must assume that jurors take conscientiously their responsibility to decide the outcome of the trial in accord with the trial court's instructions. They are instructed in every case to render their verdict *solely* upon the evidence presented to them. Counsel's sleeping during trial is not evidence. The appellants attempted to overcome the presumption of regularity by introducing evidence of the jury's deliberative process. This the rule prohibits.

Moreover, full and frank discussion in the jury room, a juror's willingness to return a proper verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of post-verdict scrutiny of juror conduct. See Note, Public Disclosures of Jury Deliberations (1983), 96 Harv.L.Rev. 886, 888–992.

To permit the sanctity of the jury room to be broken to determine how jurors reacted to the demeanor of counsel during the trial would seriously undermine the stability and continued efficacy of trial by jury.

The trial court appropriately granted summary judgment to the appellees. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. The appellants' assignment of error is overruled.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.