**DiPIETRO, Appellant,**

v.

**LIGHTHOUSE MINISTRIES et al., Appellees.**

[Cite as *DiPietro v. Lighthouse Ministries,* 159 Ohio App.3d 766, 2005-Ohio-639.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–910.

Decided Feb. 17, 2005.

John M. Gonzales, for appellant.

Stanley S. Keller, Walter H. Krohngold, Martin T. Powers, and Michael Cole, for appellees.

McGRATH, Judge.

{¶ 1} Plaintiff-appellant, Tracy L. DiPietro, appeals from the August 9, 2004 judgment entry of the Franklin County Court of Common Pleas, which granted the motion of defendants-appellees, Lighthouse Ministries and the Church of Christ in Christian Union ("defendants"), for summary judgment. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} In May 2001, plaintiff and her then husband, Tony DiPietro, attended a revival church meeting where Pastor Troy Ervin was speaking. Ervin invited the couple to attend services at Lighthouse Ministries, where he was the senior pastor and regularly preached. Plaintiff soon began attending services at the church on a regular basis.

{¶ 3} At around that same time, plaintiff was experiencing problems in her marriage. Plaintiff confided in Ervin about her marital problems. As senior pastor, Ervin provided plaintiff with spiritual counseling to help with her problems. Plaintiff and Ervin had approximately four such counseling sessions, which took place in his office at the church. Plaintiff also spoke to Ervin while attending church.

{¶ 4} Sometime in early July 2001, plaintiff and Ervin met in a park, where they shared a kiss. Soon after that kiss, Ervin called plaintiff at her home and invited her to his apartment. Plaintiff initially said no because of Ervin's wife,

but then Ervin explained that his wife was not home, because she was studying for the bar exam. Plaintiff and Ervin arranged to meet in the parking lot at Tuttle Mall so that plaintiff could follow Ervin back to his apartment, which she did. There, the couple engaged in consensual sexual intercourse.

{¶ 5} In August 2001, Ervin resigned from his position as senior pastor at the church. Ervin told the congregation that he and his wife had been having marital problems and cited his forthcoming divorce as the impetus for his resignation. Ervin's wife was the daughter of Pastor Herschel Holly, who was junior to Ervin at the church. After Ervin resigned, Pastor Holly became senior pastor.

{¶ 6} In late October 2001, Pastor Holly learned that Ervin had had extramarital affairs. Rod Sanders ("Sanders"), who was then married to Kelly Sanders and is now married to plaintiff, contacted Pastor Holly's daughter and told her that Ervin had had an affair with Kelly Sanders, as well as with another woman whom he did not name. Pastor Holly's daughter confided in her mother, Mary Holly, who then told her husband, Pastor Holly, of Ervin's affairs. Pastor Holly contacted Sanders and told him that he needed to know what was going on and requested that Sanders disclose the parties involved. Sanders spoke with plaintiff about Pastor Holly's request, and plaintiff herself went to Pastor Holly and told him that she had had an affair with Ervin. Both plaintiff and Pastor Holly testified that this was the first time that Pastor Holly knew of Ervin's affair with plaintiff. It was also during this time that plaintiff and Sanders began a romantic relationship.

{¶ 7} Within 30 minutes of learning about Ervin's affair with plaintiff, Pastor Holly called his direct supervisor, the denomination's district superintendent, and apprised him of the situation. One of the actions taken by the denomination was to immediately discontinue Ervin's severance package. In addition, the denomination revoked Ervin's ordination and sent a letter to all licensed ministers associated with the denomination stating that Ervin should not be permitted to conduct church services. In November 2001, the church's congregation was also informed of the situation that had come to light, but plaintiff's name was not mentioned.

{¶ 8} Plaintiff continued to attend services at the church until December 2001, when she had a confrontation with Mary Holly. On that particular Sunday, plaintiff and her mother were praying at the altar. Mary Holly joined them, and a confrontation ensued, although what was actually said is in dispute. Plaintiff states that Mary Holly called her a liar and told her that she should break up with Sanders, since both she and Sanders were still married to other people and that she was never to marry again because of the adulterous affair she had had

with Ervin. Mary Holly also suggested that plaintiff seek spiritual guidance from Pastor Holly.

{¶ 9} In June 2002, plaintiff filed the instant action against defendants and Ervin, alleging that defendants had been negligent in their hiring, supervision, and retention of Ervin because they knew or should have known that he would take sexual advantage of female members of the church. Plaintiff also claimed that as a result of Ervin's conduct, she suffered severe and debilitating emotional distress, embarrassment, mental anguish, stress, and loss of reputation. Defendants moved for summary judgment, which was granted by decision on May 3, 2004, and on August 9, 2004, by judgment entry. Also on August 9, 2004, plaintiff dismissed Ervin pursuant to Civ.R. 41(A).

{¶ 10} Plaintiff appeals, assigning the following assignment of error:

[1.] The trial court erred by granting appellees [sic] motion for summary judgment.

{¶ 11} Plaintiff contends that summary judgment was improperly granted. Civ.R. 56(C) states that summary judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 12} Accordingly, summary judgment is appropriate only if (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 375 N.E.2d 46. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 13} Appellate review of summary judgments is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265; *Midwest*

*Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. We stand in the shoes of the trial court and conduct an independent review of the record. Therefore, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See *Dresher,* supra; *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 14} Plaintiff contends that the trial court erred in granting defendants' motion for summary judgment where evidence was presented to support her claims for liability premised upon the theories of respondeat superior and negligent hiring, retention, and training.

{¶ 15} First, plaintiff asserts that Ervin's conduct, i.e., his consensual sexual relationship with plaintiff, took place within the course and scope of his employment. Defendants disagree. The leading Ohio case regarding the application of respondeat superior as it pertains to clergy misconduct is *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584. In that case, the Supreme Court of Ohio restated the well-established rule that "in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment." Id. at 58, 565 N.E.2d 584. It further explained that when the tort is intentional, the behavior giving rise to the tort must be " 'calculated to facilitate or promote the business for which the servant was employed.' " *Byrd,* 57 Ohio St.3d at 58, 565 N.E.2d 584, quoting *Little Miami RR. Co. v. Wetmore* (1869), 19 Ohio St. 110, 132; see, also, *Taylor v. Doctors Hosp.* (1985), 21 Ohio App.3d 154, 21 OBR 165, 486 N.E.2d 1249. " '[A]n intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor.' " *Byrd,* 57 Ohio St.3d at 59, 565 N.E.2d 584, quoting *Schulman v. Cleveland* (1972), 30 Ohio St.2d 196, 59 O.O.2d 196, 283 N.E.2d 175. Thus, "an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Byrd,* 57 Ohio St.3d at 59, 565 N.E.2d 584.

{¶ 16} Ervin is not the first member of the clergy to engage in sexual relations with a parishioner. In *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 527 N.E.2d 1235, the Supreme Court of Ohio referred to a minister's sexual affair with his parishioner as "nonreligious in motivation—a bizarre deviation from normal spiritual counseling practices of ministers in the Lutheran Church." Id. at 210, 527 N.E.2d 1235. The court further opined that it was "difficult to conceive of pastoral fornication with a parishioner or communicant as a legitimate religious belief or practice." Id. See, also, *Byrd,* supra. In other words, intentional sexual activity is not related to a cleric's duties, nor does it further church interests. Therefore, that conduct does not fall within the scope of a

cleric's employment. Similar findings have been rendered in other jurisdictions. See, e.g., *Newyear v. Church Ins. Co.* (C.A.8, 1998), 155 F.3d 1041; *Tichenor v. Roman Catholic Church of New Orleans* (C.A.5, 1994), 32 F.3d 953; *Dausch v. Rykse* (C.A.7, 1994), 52 F.3d 1425; *Wilson v. Diocese of New York of the Episcopal Church* (Feb. 26, 1998), S.D.N.Y. No. 96 Civ. 2400(JGK), 1998 WL 82921; *Kennedy v. Roman Catholic Diocese* (D.C.Vt.1996), 921 F.Supp. 231; *Sanders v. Casa View Baptist Church* (N.D.Tex.1995), 898 F.Supp. 1169; *Richelle L. v. Roman Catholic Archbishop* (Cal.App.2003), 106 Cal.App.4th 257, 130 Cal.Rptr.2d 601; *Gray v. Ward* (Mo.1997), 950 S.W.2d 232; *Konkle v. Henson* (Ind.App.1996), 672 N.E.2d 450; *Schieffer v. Catholic Archdiocese of Omaha* (Neb.1993), 244 Neb. 715, 508 N.W.2d 907; *Destefano v. Grabrian* (Colo.1988), 763 P.2d 275; *Milla v. Tamayo* (1986), 187 Cal.App.3d 1453, 232 Cal.Rptr. 685.

■ {¶ 17} We agree with the rationale of the foregoing cases and find that Ervin's sexual relationship with plaintiff does not fall within the scope of his duties as a pastor or as a pastoral counselor, nor was it a reasonably foreseeable outgrowth of these duties. Moreover, the lone act of consensual sexual intercourse between plaintiff and Ervin was planned in advance, did not occur on or near church premises, and did not arise out of a counseling session. It occurred when Ervin called plaintiff on the telephone and invited her to his apartment, while also informing her that his wife was not home. Plaintiff accepted Ervin's invitation and drove herself to Tuttle Mall, where she met Ervin in the parking lot and followed him in her own car back to his apartment. Plaintiff knew when she accepted Ervin's invitation that a sexual encounter was on the horizon. Given the case law cited above and the facts herein, Ervin's sexual relationship with plaintiff was clearly outside the scope of his employment. Thus, defendants cannot be liable to plaintiff under the theory of respondeat superior.

{¶ 18} Plaintiff next argues that the trial court erred in granting defendants' motion for summary judgment because an issue of fact existed as to whether defendants were negligent in their hiring, retention, and training of Ervin. Defendants maintain that there is no evidence in the record that proves they had actual or constructive knowledge of Ervin's sexual proclivities prior to October 2001. The trial court granted summary judgment to defendants on that basis, and, albeit for different reasons, we agree.

■ {¶ 19} In order to prevail on a claim of negligent retention, plaintiff must establish "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Ruta v. Breckenridge–Remy Co.* (1982),

69 Ohio St.2d 66, 69, 430 N.E.2d 935; *Essig v. Sara Lane Corp.* (Aug. 1, 2000), Franklin App. No. 99AP–1432, 2000 WL 1072463.

█ {¶ 20} Plaintiff contends that defendants had the requisite notice of Ervin's sexual proclivities prior to her sexual encounter with him in July 2001. She testified in her deposition that Ervin told her that Pastor Holly had confronted him about a previous "sexual" and "inappropriate situation" with a woman, and so he and plaintiff had to "be careful." For several reasons, however, we find that plaintiff's deposition testimony fails to raise a genuine issue of material fact.

{¶ 21} Civ.R. 56(E) provides that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." See, e.g., *Campbell v. Ohio State Univ. Med. Ctr.*, Franklin App. No. 04AP–96, 2004-Ohio-6072, 2004 WL 2591238, at ¶ 14 (plaintiff's deposition testimony that was not based on personal knowledge was not proper for consideration by a court in a summary judgment context); *Holley v. Massie* (1995), 100 Ohio App.3d 760, 654 N.E.2d 1293 (affidavit of plaintiff's expert was properly disregarded because it was based on hearsay and not personal knowledge); *Bernardo v. Anello* (1988), 61 Ohio App.3d 453, 573 N.E.2d 126. See, also, *Lucas v. Chance* (C.A.6, 2005), 121 Fed.Appx. 77; *Weigel v. Baptist Hosp.* (C.A.6, 2002), 302 F.3d 367; *White v. Ohio* (C.A.6, 2001), 2 Fed. Appx. 453, 458–459; *Wiley v. United States* (C.A.6, 1994), 20 F.3d 222, 226. ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.")

{¶ 22} The only evidence proffered by plaintiff in this case to support her contention that defendants had knowledge is her deposition testimony, which does not comply with the requirements of Civ.R. 56(E). Plaintiff's deposition testimony that Pastor Holly confronted Ervin about an "inappropriate situation" with a woman prior to July 2001 is not based on her own personal knowledge of the event. Rather, it is based on what she claims Ervin told her about what Pastor Holly told him. Indeed, the specifics of this confrontation are unknown and not otherwise supported by the record. Such evidence is not only inappropriate under the rule but also contradicts the direct testimony of Pastor Holly, who denied having knowledge of any sexual activity between Ervin and church attendees until October 2001, when he took action against Ervin. The present situation illustrates the danger contemplated by the rule, that being issues of fact created by parties without personal knowledge of those facts in order to defeat a properly supported motion for summary judgment. Accordingly, plaintiff's deposition testimony regarding this issue may not be considered for the purposes of

summary judgment, and therefore, plaintiff has failed to demonstrate a genuine issue of material fact.

{¶ 23} Moreover, even if Pastor Holly had such knowledge, it cannot be imputed to defendants because there is no evidence in the record to suggest that Pastor Holly acquired that knowledge while acting within the scope of his employment. *Hallowell v. Athens*, Athens App. No. 03CA29, 2004-Ohio-4257, 2004 WL 1802042, at ¶ 11 ("An employee's knowledge is imputed to his employer *only if* the employee obtained the knowledge while acting within the scope of his employment" [emphasis added] ), citing *Amer. Fin. Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 174, 44 O.O.2d 147, 239 N.E.2d 33.

■■ {¶ 24} In addition to the foregoing, "an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Strock*, supra, 38 Ohio St.3d at 217, 527 N.E.2d 1235. In this case, it is undisputed that the lone sexual encounter between Ervin and plaintiff was consensual. In that regard, "[i]t is a fundamental principle of the common law that volenti non fit injuria—to one who is willing, no wrong is done." Prosser and Keeton, The Law of Torts (5th Ed.1984) 112, Section 18.

{¶ 25} A case employing that principle, and factually similar to the case sub judice, is *Schieffer v. Catholic Archdiocese of Omaha* (1993), 244 Neb. 715, 508 N.W.2d 907. In that case, the plaintiff brought an action for damages against the Catholic Archdiocese of Omaha and her parish priest, with whom she had engaged in a consensual sexual affair. The plaintiff asserted that the archdiocese was negligent in failing to supervise the priest in connection with his pastoral duties when it knew or should have known of his prior sexual affairs and in failing to remove the priest from his position despite this knowledge.

{¶ 26} The Supreme Court of Nebraska affirmed the dismissal of the plaintiff's claims upon demurrer. It held that the plaintiff's consent barred any recovery against the priest, and as a result, plaintiff could have no cause of action against the archdiocese. In reaching that conclusion, the *Schieffer* court relied upon *Strock*, supra.

{¶ 27} Applying *Schieffer* here, we reach the same result. The case at bar involves conduct between two consenting adults. Plaintiff testified in her deposition that Ervin did not use force, drugs, or threats to coerce her into having sex with him. And although plaintiff alleges that Ervin "took sexual advantage" of her, "[t]his allegation falls far short of alleging that the plaintiff was incapable of consenting to what took place." *Schieffer*, supra, 244 Neb. at 718, 508 N.W.2d

907. Therefore, if Ervin individually has no tort liability to the plaintiff, it follows that defendants cannot be held liable for his conduct.

{¶ 28} Based on the foregoing, we conclude that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. Thus, plaintiff's sole assignment of error is overruled. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

PETREE and FRENCH, JJ., concur.