OPINION
{¶ 1} Plaintiff-appellant, Anthony Brown, appeals from a directed verdict entered by the Franklin County Court of Common Pleas in favor of defendant-appellee, Grant Medical Center ("Grant"). For the following reasons, we affirm.
 {¶ 2} On January 31, 2006, Brown filed a complaint against Grant, "Doe Nurse," "Doe Hospital Owner," "Doe Security Guard # 1," "Doe Security Guard # 2," "Doe Security Guard # 3," and "Doe Security Company." Through his complaint, Brown *Page 2 
alleged that he had visited Grant's emergency room on January 31, 2004, and that he was assaulted. According to Brown's complaint, the following events occurred that morning.
 {¶ 3} Brown was a passenger in a vehicle involved in an accident at about 3:00 a.m. Following the accident, he decided to walk to his intended designation, but experienced severe pain and became unsteady. A police officer stopped and ultimately drove Brown to Grant at about 3:30 a.m.
 {¶ 4} Once at Grant, hospital personnel checked him in and instructed him to undress, lie down, and await the doctor. Brown complied and then fell asleep. He was awakened by a pain in his arm caused by a nurse attempting to draw blood. Brown asked the nurse to stop, and the nurse explained that the doctor had ordered blood work. When Brown asked to speak to the doctor, the nurse stated that the doctor would not see Brown until the blood work was completed.
 {¶ 5} When the nurse left Brown alone, Brown again fell asleep. The nurse awoke him abruptly and instructed him to get dressed and leave the premises. After initially leaving the area, the nurse returned with three security guards. The security guards acted aggressively toward him and informed him that he had to leave immediately. Brown perceived their actions and words as a threat.
 {¶ 6} When Brown asked the nurse whether the doctor would see him and prescribe pain medication, the nurse responded that the doctor would not see him and would not give Brown any "narcotics." One or more of the guards told Brown that he would have to "go elsewhere for [his] drugs." *Page 3 
 {¶ 7} The security guards escorted Brown toward the exit. Brown alleged that he complied with every request, but that he spoke to two strangers in an effort to get their names as witnesses to his ill-treatment. At that point, the guards grabbed him violently, threw him against a wall, and pushed him out of the premises and onto the pavement. Brown alleged that he suffered injuries as a result of this treatment.
 {¶ 8} For his claims for relief, Brown alleged that the nurse had negligently and intentionally assaulted him, defamed him, inflicted serious emotional harm and distress, and committed battery. As against Grant and its owner, Brown alleged that these defendants had authorized the actions of the nurse and security guards. As against the security guards, Brown alleged negligent and intentional assault, defamation, infliction of serious emotional harm and distress, and battery. As against the security company, Brown alleged that the company had authorized the guards' actions.
 {¶ 9} For its answer, Grant admitted that Brown was at Grant on January 31, 2004, but denied the substantive allegations contained in the complaint. Grant eventually moved for summary judgment, which the trial court denied.
 {¶ 10} For our purposes, the next important event is that the case proceeded to a jury trial on February 4, 2008. Brown appeared pro se. He testified on his own behalf, giving his medical history and his version of what occurred at the emergency room. Regarding the circumstances surrounding his exit from the hospital, Brown stated:
 We're walking through the corridor and I seen two patients that was in there and I asked them I said excuse me to them. Only thing I said to them. They grabbed me, twisted my arms behind me, forced me, pushed me towards the wall. I broke the noose from one of them in order to break my fall against the wall which he already mentioned that they did put me against the wall. Then they threw me out the door and said don't come back here. It's criminal trespass. So I *Page 4 
could not understand the reason why I was treated this way. You understand, I didn't give them no apparent reason.
(Vol. II Tr. 166.)
 {¶ 11} Brown admitted that he had had prior injury to his wrist. The injury resulted from an assault in 1999. He also submitted medical records indicating treatment for pain and injury in September 2001.
 {¶ 12} Brown testified that, after the January 31, 2004 incident at Grant, he sought treatment at numerous hospitals in Ohio and Arizona. Although x-rays taken at Mount Carmel Hospital in Columbus indicated no broken bones, Brown testified that x-rays taken at the Arizona hospital showed that his wrist was broken.
 {¶ 13} During cross-examination, Grant's counsel asked Brown about his 31 visits to the Grant emergency room from September 2001 to January 31, 2004. Brown admitted that he also went to the OSU East emergency department 28 times during that time period, as well as seven other hospitals in Ohio and Arizona.
 {¶ 14} The deposition testimony of Joseph Schlonsky, M.D., was read into the record. Dr. Schlonsky appeared as a medical expert on Brown's behalf.
 {¶ 15} Dr. Schlonsky testified that he had reviewed medical reports of Dr. Ronald Joseph, who had performed surgery on Brown's wrist. Dr. Schlonsky did not examine Brown. Based on his medical record review, Dr. Schlonsky formed a medical opinion that the Grant incident caused a triangular ligament tear and a distal radial ulnar joint dislocation.
 {¶ 16} In reaching this opinion, Dr. Schlonsky was aware of the 1999 injury to Brown's right arm. That injury, he said, was unrelated to the injuries resulting from the Grant incident in 2004. Dr. Schlonsky was also aware of a September 2001 emergency *Page 5 
room visit, the records of which indicated that Brown fell down some stairs and hurt his right wrist. On cross-examination, Dr. Schlonsky agreed that he could only render a reliable medical opinion if he had an accurate medical history concerning relevant treatment. He stated: "Well, if there's something I don't have, then I can't make any conclusion at all." (Vol. II Tr. 295.)
 {¶ 17} Following the reading of Dr. Schlonsky's testimony, Brown rested. At that point, Grant moved for a directed verdict. Grant argued that Brown had failed to put forward any evidence concerning a serious emotional injury, thus failing to prove his claims for negligent and intentional infliction of serious emotional distress. Grant also argued that Brown had failed to support his defamation claim. The trial court denied the motion.
 {¶ 18} Grant also moved for directed verdict on Brown's claims for damages arising from his physical injury. The court expressed concern that Dr. Schlonsky did not have the appropriate medical records to form an opinion, but did not grant the motion.
 {¶ 19} Grant's first witness was Dr. William Barker, an orthopedic surgeon. Dr. Barker identified medical reports indicating that Brown had fractured his right wrist in June 1999, the cast was removed, and then he reinjured his wrist in August 1999. Dr. Barker testified that Dr. Schlonsky had not been given these medical records, which included x-rays.
 {¶ 20} Dr. Barker also testified concerning medical records for an emergency room visit in August 2000. These records indicated that Brown had sustained a 90-percent laceration of the flexor carpial nerve in his right wrist, a significant tendon in the *Page 6 
forearm. Dr. Barker testified that Dr. Schlonsky had only been given the x-rays from those records.
 {¶ 21} Dr. Barker also testified concerning medical records for a September 11, 2001 visit to the OSU East emergency room. According to the records, Brown had fallen down the stairs and complained of back and right wrist pain. It appeared to Dr. Barker that Dr. Schlonsky had the significant records from this visit.
 {¶ 22} Dr. Barker also testified concerning medical records for a September 18, 2001 visit to OSU East. The records indicated that, on that date, Brown asked for additional pain medication because he had not yet seen a physician as a result of the September 11 injury. Dr. Schlonsky did not have these medical records.
 {¶ 23} Dr. Barker also testified concerning medical records for a visit to a VA facility on September 28, 2001. The records indicate that Brown had an unexplained cast, which Dr. Barker found significant. Dr. Schlonsky did not have these medical records.
 {¶ 24} Dr. Barker also testified concerning numerous hospital and clinic visits that occurred after January 31, 2004. As to all of these records — for visits on February 2, February 3, February 5, February 20, February 24, and April 2004 — Dr. Barker testified that they were significant for purposes of forming an opinion about Brown's alleged wrist injury, but the records had not been given to Dr. Schlonsky.
 {¶ 25} From his review of Brown's medical history, Dr. Barker reached the opinion that Brown had degenerative arthritis, probably as a result of a sprain that occurred prior to the incident at Grant. Dr. Barker expressly stated that, in his opinion, *Page 7 
there is no medical evidence to establish that Brown sustained any additional injury to his wrist on January 31, 2004.
 {¶ 26} Following Dr. Barker's testimony, the court re-visited Grant's motion for directed verdict. The focus of Brown's argument against a directed verdict was that Dr. Schlonsky made a diagnosis of two specific conditions, and no medical records suggested that these injuries existed prior to January 31, 2004.
 {¶ 27} The record indicates a lengthy discussion on the directed verdict motion, including a discussion of the evidence underlying the medical opinions of Dr. Schlonsky and Dr. Barker. The court stated: "In the normal course of events, the disagreement of two experts concerning the proximate cause of an injury is a jury question. The jury evaluates the credentials, the expertise and what the experts reviewed in reaching their respective opinion." (Vol. III Tr. 395.) In this case, however, the court found "that the information provided to Dr. Schlonsky is insufficient as a matter of law to enable him to tender an admissible opinion. If I conclude that, then his testimony cannot be considered by the trier of fact." (Vol. III Tr. 396.)
 {¶ 28} The court also concluded that Brown had "not established proximate cause with regards to the assault charge. And that is even more critical than the missing information with regards to Dr. Schlonsky." (Vol. III Tr. 400.) Thus, the court found that, "as a matter of law," the assault counts could not go to the jury. (Vol. III Tr. 400.)
 {¶ 29} The court also found that Brown had not submitted evidence sufficient to establish his claims for defamation, intentional infliction of emotional distress, and *Page 8 
negligent infliction of emotional distress. The court granted judgment in favor of Grant on these claims.
 {¶ 30} Having granted judgment in favor of Grant on all of Brown's claims, the court dismissed the jury. The court subsequently issued a corrected entry granting final judgment to Grant and further explaining the court's grounds for the judgment.
 {¶ 31} Brown filed a timely notice of appeal. Now represented by counsel, he
raises a single assignment of error:
 THE TRIAL COURT ERRED WHEN IT SUSTAINED APPELLEE'S MOTION FOR A DIRECTED VERDICT WHEN THE EVIDENCE HAD SUFFICIENT PROBATIVE VALUE TO PROCEED TO JURY.
 {¶ 32} Through this assignment, Brown argues that the trial court erred by concluding that Dr. Schlonsky's medical opinion was unreliable as a matter of law, and, therefore, that Brown offered no evidence in support of his claims for assault and battery because, without Dr. Schlonsky's opinion, there was no evidence to establish a causal link between his wrist injury and the guards' actions. Brown does not, however, assign error regarding the court's dismissal of Brown's claims for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Thus, as Grant asserts and Brown's counsel confirmed at oral argument, those issues are not before us on appeal. The only issues on appeal, then, relate to the directed verdict in Grant's favor on Brown's claims for assault and battery.
 {¶ 33} Grant argues further, however, that the trial court had additional and independent grounds, beyond its exclusion of Dr. Schlonsky's opinion, for granting judgment in favor of Grant on Brown's claims for assault and battery. And, because Brown has not challenged these independent grounds for the judgment, we may affirm *Page 9 
the trial court's judgment without reaching the question whether the court's exclusion of Dr. Schlonsky's opinion was proper. We agree.
 {¶ 34} As we noted previously, Brown's complaint alleged that three "Doe Security Guard[s]" committed assault and battery against him. At no point, however, did Brown name any individual security guards as defendants or serve them with the complaint. Therefore, the only defendant appearing at trial was Grant, and Brown's claims against hospital employees or agents could only succeed or fail as to Grant.
 {¶ 35} In order for an employer to be liable for an employee's actions under the doctrine of respondeat superior, the tort at issue must have been within the scope of employment. DiPietro v. LighthouseMinistries, 159 Ohio App.3d 766, 2005-Ohio-639, ¶ 15, citing Byrd v.Faber (1991), 57 Ohio St.3d 56, 58; Taylor v. Doctors Hospital (1985),21 Ohio App.3d 154, 156-157. Where the tort is intentional, the employee's actions must be "`calculated to facilitate or promote the business for which the servant was employed.'" Byrd at 58, quotingLittle Miami RR. Co. v. Wetmore (1869), 19 Ohio St. 110, 132. An employee's intentional attack, "`to vent his own spleen or malevolence against the injured person, is a clear departure from his employment,'" and his employer is not responsible. Schulman v. Cleveland (1972), 30 Ohio St.2d 196, 198, quoting Vrabel v. Acri (1952), 156 Ohio St. 467,474.
 {¶ 36} Here, Brown only called himself and Dr. Schlonsky as witnesses on his behalf. He did not call any of the guards as witnesses, nor did he call any other hospital personnel. He presented no testimony concerning whether the guards' actions were within the scope of their employment or whether they were calculated to facilitate *Page 10 
Grant's business. Therefore, the trial court properly granted judgment in favor of Grant on these issues.
 {¶ 37} On appeal, Brown does not challenge this aspect of the court's judgment. We agree with Grant that the lack of evidence concerning these issues is fatal to Brown's appeal. Even if the court had not excluded Dr. Schlonsky's opinion that the guards' actions caused injury to Brown's wrist, Brown's claim for assault and battery would still have failed because he presented no evidence supporting a theory of liability against Grant. Nor does Brown challenge the court's dismissal of the assault and battery claims against "Doe Nurse," who allegedly committed a tort against Brown when he attempted to draw blood while Brown was asleep.
 {¶ 38} A trial court's error only provides a basis for reversal if the error affects a substantial right of the complaining party. Civ. R. 61. "When avoidance of the error would not have changed the outcome of the proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party." Brothers v. Morrone-O'Keefe Dev. Co., LLC, Franklin App. No. 06AP-713, 2007-Ohio-1942, ¶ 56, citing Fada v. Information Sys. Networks Corp. (1994), 98 Ohio App.3d 785, 792.
 {¶ 39} Here, regardless of whether the trial court erred when it excluded Dr. Schlonsky's medical opinion and granted judgment in Grant's favor for lack of medical evidence creating a causal link between Brown's alleged injury and the events on January 31, 2004, the trial court articulated additional, independent grounds for a directed verdict in Grant's favor on all of Brown's claims. Because Brown has not *Page 11 
challenged these other grounds on appeal, any decision on the assigned error would not impact the trial court's judgment.
 {¶ 40} In reaching this conclusion, we have not considered, and we express no opinion concerning, whether the trial court erred by excluding Dr. Schlonsky's medical opinion. Nevertheless, because Brown's assignment of error provides no cause for us to disturb the trial court's judgment, we overrule it.
 {¶ 41} Having overruled Brown's single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 PETREE and SADLER, JJ., concur. *Page 1